UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHELLY J. DAVINE, JAMES E. WILLIAMS, JACOB E. OGDEN, BETH A. FARRAR, and PHILIP CARDINALE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE GOLUB CORPORATION, THE PRICE CHOPPER OPERATING CO. OF MASSACHUSETTS, INC., NEIL M. GOLUB, JEREL GOLUB, JOHN J. ENDRES, JR., CHRISTINE C. DANIELS, AND JEREL T. GOLUB,<br><br>Defendants. | Civil Action No. 14-30136-MGM |

MEMORANDUM AND ORDER REGARDING PLAINTIFFS'
EMERGENCY MOTION FOR PROTECTIVE ORDER
(Dkt. No. 43)

October 24, 2014

MASTROIANNI, U.S.D.J.

Plaintiffs, Shelly J. Davine, James E. Williams, Jacob E. Ogden, Beth A. Farrar, and Philip Cardinale, are current or former employees of Price Chopper supermarkets in Massachusetts, New York, Connecticut, and Pennsylvania. Each is or has been employed as a Team Leader at one or more Price Chopper supermarkets.[1] They have instituted this suit against Defendants: The Golub Corporation; The Price Chopper, Inc.; Price Chopper Operating Co. of Massachusetts, Inc.; Neil M. Golub; Jerel Golub; John J. Endres, Jr.; Christine C. Daniels; and Jerel T. Golub (collectively "Price Chopper" or "Defendants"). Plaintiffs assert that Price Chopper improperly classified them, and

---

[1] Plaintiffs refer to the position as Team Leader, Defendants refer to the position as Department Manager. For reasons of consistency and brevity, the court uses the shorter term, Team Leader.

other similarly situated Team Leaders, as workers exempt from overtime protections in violation of the Fair Labor Standards Act ("FLSA") and analogous state laws.

Before the court is Plaintiff's Emergency Motion for Protective Order (Dkt. No. 43). In their motion, Plaintiffs assert that one or more Price Chopper store managers made misleading statements about this litigation to potential class and collective members. They argue that remedial action is required to prevent further misleading communications and to prevent the communications that have occurred from discouraging potential class members from participating in the lawsuit. Defendants concede that one Store Manager initiated communication about this lawsuit with a group of employees that included Plaintiff Philip Cardinale and three potential class members, but they assert that any harm has already been neutralized.

The parties have each submitted an affidavit from a person connected with the communications at issue. Plaintiffs support their position with the affidavit of Philip Cardinale, ("Cardinale") who attended the meeting at the Wyoming, Pennsylvania Price Chopper (the "Wyoming Store") during which the Store Manager discussed the litigation. Defendants have provided the affidavit of their Legal Assistant, Carrie Terraferma ("Terraferma"). Recognizing that Plaintiffs, as the moving party, have the burden of establishing, by a preponderance of the evidence, that a protective order is warranted, the court asked whether Plaintiffs wanted an evidentiary hearing. Plaintiffs declined the offer, asserting that the written record provides sufficient evidence to support their position.[2]

A careful reading of the two affidavits reveals no factual conflicts between them, though read independently each affidavit suggests inferences at odds with the facts presented in the other

---

[2] At the hearing on their motion, Plaintiff suggested that the court should apply the standard applicable to review of summary judgment motions when determining whether there is a factual dispute among the parties, taking as true any fact offered by a party unless the other party has offered evidence to put the truth in question. The court declines to follow this approach because when considering a motion to limit party communications with potential class or collective action members, the court must act as a fact finder, a role that is specifically denied to it when the court considers a motion for summary judgment.

affidavit. The most glaring example comes from Cardinale's speculation that Price Chopper's corporate executives had instructed the Store Manager relative to his comments regarding this litigation. From this speculation, Plaintiffs unsuccessfully urge the court to infer the Store Manager did, in fact, receive instructions from one or more corporate executives. Based on the absence of clear conflicts between the affidavits and the positions taken by the parties at the hearing, the court concludes that an evidentiary hearing is unnecessary in this case. Instead, the court relies on the Cardinale and Terraferma affidavits to find that the following facts are supported by a preponderance of the evidence before the court.

I. FACTS

Plaintiffs filed an amended complaint, which added Cardinale as a plaintiff, on August 6, 2014. (Dkt. No. 11, First Amended Class Action Complaint.) Cardinale is a Team Leader at the Wyoming Store. (Dkt. No. 45, Cardinale Aff. ¶ 5.) The following day, Terraferma arranged for an email to be sent to all Price Chopper Store Managers outlining the proper conduct for Store Managers in connection with the pending litigation. (Dkt. 46-1, Terrafirma Aff. ¶ 3.) In that email, Price Chopper store managers were instructed not to initiate conversations about the lawsuit and to discuss the lawsuit only if specifically asked about it. (Dkt. 46-1, Terraferma Aff. ¶ 4.) Additionally, Carrie Terraferma stated that she personally called the Store Manager at the Wyoming Store on August 7, 2014 to inform him that one named plaintiff was employed at his store and to "reinforce with him not to initiate any communication with putative class members." (Dkt. 46-1, Terraferma Aff. ¶ 5.)

On August 11, the Store Manager at the Wyoming Store held a meeting for all Team Leaders in the store break room. (Dkt. 45, Cardinale Aff. ¶ 7.) At the end of the meeting, the Store Manager made comments about the litigation. (Dkt. 46-1, Terraferma Aff. ¶ 10.) The Store Manager told those at the meeting about the law suit, indicating that it has no merit, and said that the suit was filed

3

by a "disgruntled ex-employee who had been fired from Price Chopper multiple times." (Dkt. 45, Cardinale Aff. ¶ 8.) He also "indicated that Price Chopper has a team of legal counsel" whom attendees could contact with questions. Finally, he said that Team Leaders should "inform him immediately" if contacted by an attorney about the case. (Dkt. 45, Cardinale Aff. ¶ 10.)

Three days after the meeting occurred, Terraferma learned about an allegation that a Store Manager had commented about the litigation to his store's Team Leaders. (Dkt. 46-1, Terraferma Aff. ¶ 6.) The following week, Terraferma contacted the Store Manager and discussed the allegation with him. (Dkt. 46-1, Terraferma Aff. ¶ 6.) She reminded him of the August 7th email and their previous conversation, again counseling him to refrain from commenting on the pending litigation. (Dkt. 46-1, Terraferma Aff. ¶ 11.) Plaintiffs' counsel sent a letter to Defendants' counsel expressing concern about the incident on August 28, 2014. (Dkt. 44-1, Letter from William Anthony, Esq. to Rachel Bien, Esq. to Pls. (Sept. 3, 2014).) On September 4, 2014, Price Chopper's Human Resources Specialist traveled to the Wyoming Store. (Dkt. 46-1, Terraferma Aff. ¶ 12.) He reiterated that the Store Manager should not initiate conversations about the lawsuit. (Id.) Then, outside the presence of the Store Manager, he met with the employees who had attended the August 11, 2014 meeting and conveyed to them that "Price Chopper respects their choice whether they choose to participate in the lawsuit or not." (Dkt. 46-1, Terraferma Aff. ¶ 14.) He also assured them that regardless of their decision they would receive neither adverse action nor preferential treatment. Id. That same day, Terraferma arranged for the content of the August 7, 2014 email to be resent to all store managers. (Dkt. 46-1, Terraferma Aff. ¶ 15.)

Finally, no court approved notices of this suit have yet been sent to potential class members and there is currently no time limit for potential plaintiffs to choose to join this suit.

II. DISCUSSION

A. APPLICABLE STANDARDS

"[A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981). "[E]ven prior to certification, a district court may, pursuant to Rule 23(d), regulate communications by parties and their counsel with putative class members." Hinds Cnty., Miss. v. Wachovia Bank N.A., 790 F. Supp. 2d 125, 134 (S.D.N.Y. 2011) (citing additional cases); see also Castaneda v. Burger King Corp., No. C 08–4262, 2009 WL 2382688, at *5 (N.D.Cal. July 31, 2009). The court's duty and authority flows from Rule 23 of the Federal Rules of Civil Procedure. Gulf Oil Co. v. Bernard, 452 U.S. at 99. "Rule 23 specifically empowers district courts to issue orders to prevent abuse of the class action process." In re Sch. Asbestos Litig., 842 F.2d 671, 680 (3d Cir. 1988). "[T]he same principles that govern communications with putative class members in a class action under Rule 23 also apply to communications with potential opt-in plaintiffs in a collective action brought under the FLSA." Zamboni v. Pepe W. 48th St. LLC, 12 CIV. 3157 AJN JCF, 2013 WL 978935 (S.D.N.Y. Mar. 12, 2013).

An "order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." Gulf Oil Co. 452 U.S. at 101. The court should also give "explicit consideration to the narrowest possible relief" that would protect the respective parties. Id. at 102 (quoting Coles v. Marsh, 560 F.2d 186, 189 (3d Cir. 1977)). Courts should impose only such restrictions as are required to prevent serious abuses or remedy the harm from such abuses because restrictions can limit expression, implicating First Amendment issues. Id. Misleading or coercive communications with potential class members that could or are intended to undermine participation in a class or collective action are of great concern. Id. When an ongoing

5

business relationship, such as employer-employee exists, any communications are more likely to be coercive. Belt v. Emcare, Inc., 299 F. Supp. 2d 664, 668 (E.D. Tex. 2003). On the other hand, "a defendant employer may communicate with prospective plaintiff employees who have not yet 'opted in,' unless the communication undermines or contradicts the Court's own notice to prospective plaintiffs." Parks v. Eastwood Ins. Servs., Inc., 235 F. Supp. 2d 1082 (C.D. Cal. 2002).

B. ANALYSIS

The court's analysis begins with the question of whether the court should order a remedy to prevent the isolated communication by a single Store Manager to three potential class members from limiting plaintiff participation, thus undermining the court's role in managing this litigation. The limited facts before the court establish that Defendants took concrete steps to discourage Store Managers from discussing the litigation. Despite those efforts, the Store Manager at the Wyoming Store still spoke about the litigation at a meeting attended by a named plaintiff and three potential class members. When Defendants learned that the meeting had occurred they took remedial steps: reminding all store managers to refrain from initiating conversations about the lawsuit and sending a human resources specialist to the store to speak with the store manager and the employees to whom the Store Manager spoke regarding the lawsuit. The human resources specialist told the potential class members that they were free to join the suit and that they would not be retaliated against if they chose to do so. The three potential class members are known by Cardinale, a named plaintiff.

Given the record before the court, two things are clear. First, three potential class members received a verbal communication from their supervisor that included misleading information about the lawsuit and expressed his opinion that the suit was without merit. This communication did not involve particularly egregious conduct. For example, potential class members were not contacted during an opt-in period, the communication did not violate an existing agreement of the parties, and potential class members were not asked by an employer to sign statements relevant to the litigation.

See, e.g. Veliz v. Cintas Corp., C 03-1180 SBA, 2004 WL 2623909 (N.D. Cal. Nov. 12, 2004)(extending opt-in deadline for potential class members who received a letter signed by the CEO of the defendant company after the court had set a deadline for the return of opt-in notices); Bullock v. Auto. Club of S. California, SA CV01-731-GLT(ANX), 2002 WL 432003 (C.D. Cal. Jan. 28, 2002) (requiring a corrective notice where the defendant breached a stipulation between the parties concerning contact with potential class members); Quezada v. Schneider Logistics Transloading & Distribution, CV 12-2188 CAS DTBX, 2013 WL 1296761 (C.D. Cal. Mar. 25, 2013) (ordering protective and corrective measures after defendant employer conducted interviews and solicited sworn statements from more than one hundred employees and potential class members).

On the other hand, the communication did have the potential to discourage participation in the suit by the three individuals who heard it. Though the communication might have had a chilling effect on participation by a limited number of individuals, Price Chopper did not intend for the communication to occur and had taken steps (albeit unsuccessfully) to prevent its occurrence. Price Chopper's efforts to prevent this communication from happening distinguish this case from those cited by Plaintiffs, all of which involved communications that were made by or at the direction of senior executives or counsel involved in litigation. See, e.g. Zamboni v. Pepe W. 48th St. LLC, 2013 WL 978935 (S.D.N.Y. Mar. 12, 2013)(requiring curative notice and other remedies in FLSA action after owners and counsel for defendant company interviewed potential class members and induced them to sign statements related to the litigation); Wright v. Adventures Rolling Cross Country, Inc., C-12-0982 EMC, 2012 WL 2239797 (N.D. Cal. June 15, 2012)(finding chilling effect from multiple, threatening emails sent by the president of defendant company to possible class members); Veliz v. Cintas Corp., C 03-1180 SBA, 2004 WL 2623909 (N.D. Cal. Nov. 12, 2004)(finding possible chilling effect from letter signed by the CEO of defendant company and sent to possible class members); Haffer v. Temple Univ. of Com. Sys. of Higher Educ., 115 F.R.D. 506, 508 (E.D. Pa. 1987)(finding

7

actual chilling effect from dissemination of memo by administration figure in class action involving college students).

Second, within a reasonable time after learning of the misleading communication, Price Chopper took steps to prevent the communication from discouraging participation among the three potential class members who were at the first meeting. Price Chopper sent a Human Resources Specialist to the store and he met with the potential class members outside the presence of their store manager. At that second meeting, the potential class members were told that it was their choice whether to participate in the litigation and that they would not face any retaliation should they choose to participate. Potential plaintiffs are under no time pressure to decide whether to join this suit and they will receive neutral information about this suit from the court well in advance of any opt-in deadline. In the court's view this second communication was sufficient, given the stage of the litigation, to remedy the potential harm caused by the initial communication.

### III. CONCLUSION

For these reasons, the court DENIES Plaintiffs' Emergency Motion for Protective Order (Dkt. No. 43).

It is So Ordered.

    /s/ Mark G. Mastroianni  
MARK G. MASTROIANNI  
United States District Judge