UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHELLY DEVINE, et al. )<br>    Plaintiffs )<br>    )<br>v. )<br>    )<br>THE GOLUB CORPORATION, et al. )<br>    Defendants. ) | Civil Case No. 3:14-30136-MGM |

MEMORANDUM AND ORDER REGARDING PLAINTIFFS' MOTION FOR
*IN CAMERA* REVIEW OF DOCUMENTS WITHHELD BY DEFENDANTS
BASED ON PRIVILEGE
(Docket No. 145)

In this discovery dispute, Plaintiffs have asked the court to review *in camera* eleven documents or categories of documents that defendants Golub Corporation, Price Chopper, Inc., Price Chopper Operating Co. of Massachusetts, and Neil M. Golub and Jerel Golub ("Price Chopper" or "Defendants") have withheld under claims of attorney-client privilege or the attorney-client privilege and the work product doctrine. Plaintiffs ask that if the court concludes that any of these documents are not privileged or otherwise protected from disclosure, the court order Defendants to produce any such documents with redactions if appropriate.[1] A copy of Defendants' privilege log is attached to this order (Dkt. No. 145-1).

I. BACKGROUND

Plaintiffs allege that it is Price Chopper's practice or policy to reduce its labor costs by unlawfully classifying its so-called Team Leaders, also referred to as Department Managers, as exempt employees not entitled to overtime pay for hours worked over forty (40) hours in a work

---

[1] Defendants' privilege log lists twelve documents or categories of documents that it declined to produce on the basis of the attorney-client privilege or the attorney-client privilege and the work product doctrine (Dkt. No. 145-1). Plaintiff initially requested *in camera* review and production of all documents identified in the privilege log, but have, at this time, withdrawn that request as to the twelfth entry on the log (Dkt. No. 157 at 1 n.1).

1

week (Dkt. No. 52 at 1, ¶ 2). On the basis of this allegation, Plaintiffs bring claims under the federal Fair Labor Standards Act ("FLSA"), the Massachusetts Wage Act, the New York Labor Law, the Connecticut Minimum Wage Act, and the Pennsylvania Minimum Wage Act (*id*. at 1-2, ¶ 2). The parties are presently engaged in non-expert discovery related to these claims. The dispute now before the court is about documents concerning an outside consultant's analysis of Price Chopper's classification of its Department Managers for purposes of the FLSA and cognate state statutes. According to William Kenneally, Esq., recently retired Price Chopper General Counsel, in or around February 2011, after receiving a memorandum from employees in Price Chopper's human resources department, he decided that it was necessary for Price Chopper to retain a consultant to assist him in analyzing the facts and circumstances relevant to the compensation classification of Department Managers for purposes of FLSA compliance (Dkt. No. 156-1 at 4, ¶¶ 7-9). Defendants' privilege log shows that Mr. Kenneally received an engagement letter from Saratoga Human Resources Solutions, Inc. ("SHRS") on or around May 26, 2011 and that SHRS thereafter prepared a report regarding its study of store level Price Chopper Department Managers (Dkt. No. 145-1 at 3-4) ("FLSA Audit" or "Audit Report"). Plaintiffs seek the production of various documents related to the audit, which was conducted with the assistance of employees in Price Chopper's human resources department and completed in 2011. After a hearing, the court concluded that the plaintiffs had raised more than a merely speculative claim that the disputed documents were not privileged or otherwise protected and that it could not resolve this discovery dispute without an *in camera* review. *See Assoc. for Reduction of Violence v. Hall*, 734 F.2d 63, 66 (1st Cir. 1984) (party seeking production of documents for which privilege or other form of protection is claimed must make threshold showing of entitlement to discovery that is more than merely speculative). Defendants provided

copies of the privilege log and the disputed documents to the court, which has conducted an *in camera* review.

II. ANALYSIS

"'The party invoking a recognized privilege has the burden of establishing, not only the existence of that privilege, but also that the established privilege was not waived.'" *Columbia Data Prods., Inc. v. Autonomy Corp., Ltd.*, Civil Action No. 11-12077-NMG, 2012 WL 6212898, at *11 (D. Mass. Dec. 12, 2012) (quoting *Cavallaro v. United States*, 153 F. Supp. 2d 52, 56 (D. Mass. 2001), *aff'd*, 284 F.3d 236 (1st Cir. 2002)). Accordingly, Defendants have the burden of showing that they are entitled to withhold production of the documents listed on the privilege log on the basis of the attorney-client privilege or the work product doctrine.

The parties have not addressed what law determines the scope of the attorney client privilege and any exceptions to it, although they have relied on federal case law in support of their respective positions. Where, as here, jurisdiction is premised on a federal question and the disputed documents constitute evidence related to the federal FLSA claims (as well as to the pendent state law claims), federal common law, "as interpreted by United States courts in the light of reason and experience" governs a claim of privilege. Fed. R. Evid. 501; *see also United States v. Mass. Inst. of Tech.*, 129 F.3d 681, 684 (1st Cir. 1997); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 441 (S.D.N.Y. 1995).

a. The attorney-client privilege and the third party exception

The First Circuit has instructed that the attorney-client privilege applies in the following circumstances:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance

3

> permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Cavallaro*, 284 F.3d at 245 (quoting 8 J.H. Wigmore, *Evidence* § 2292, at 554 (McNaughton Rev. 1961)). The privilege is well-established and serves important interests, but is nonetheless narrowly construed because its invocation may hinder the search for truth. *See Mass. Inst. of Tech.*, 129 F.3d at 684-85. It "applies only to the extent necessary to achieve the goal of ensuring effective representation though open communication between lawyer and client." *In re Grand Jury Subpoena*, 274 F.3d 563, 571 (1st Cir. 2001). In this case, Defendants assert the privilege as to communications between Price Chopper's General Counsel and Price Chopper employees and among Price Chopper employees. Communications by corporate employees with their employer's in-house counsel concerning matters within the scope of an employee's corporate duties and made for the purpose of securing legal advice from in-house counsel are protected by the attorney-client privilege. *See Upjohn v. United States*, 449 U.S. 338, 394 (1981). Communications among Price Chopper employees "that discuss or relay counsel's legal advice . . . are privileged to the extent that the employees are in a 'need to know' position or bear some responsibility for the subject matter underlying the consultation." *In re Prograf Antitrust Litig.*, No. 1:11-md-02242-RWZ, 2013 WL 1868227, at *2 (D. Mass. May 3, 2013) (citing *Se. Pa. Transp. Auth. v. Caremarkpcs Health L.P.*, 254 F.R.D. 253, 262 (E.D. Pa. 2008); *Bank Brussels Lambert*, 160 F.R.D. at 442 ("[T]he privilege protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation.")). A communication from one corporate employee to another may be privileged even though it does not reflect counsel's legal advice if the communication was about matters within the scope of the employee's duties and responsibilities, and "the employee was aware that the communication was made in order to enable [Price Chopper's] attorneys to provide legal advice to the

corporation and understood that the [matter] to which the communication related was to be treated as confidential." *Lewis v. Wells Fargo & Co.*, 266 F.R.D. 433, 444 (N.D. Ca. 2010) (evaluating claims of attorney-client privilege and work product protection for documents related to FLSA audit).

Defendants also have asserted that the attorney-client privilege protects the contents of the Audit Report prepared by SHRS, documents related to preparation of the Audit Report, such as an engagement letter between SHRS and Price Chopper's General Counsel, and notes taken by SHRS of its interviews with Price Chopper Store and Department Managers. The attorney-client privilege applies to communications made in confidence between an attorney and a client. Thus, an attorney's communications with, or in the presence of, a third party, such as SHRS, about the subject matter of the attorney's legal representation generally are not protected by the attorney-client privilege, nor are the third party's communications with the client protected. *See Cavallaro*, 284 F.3d at 246-47 (presence of a third party during attorney-client communication often is sufficient to undermine confidentiality requirement). "An exception to this general rule exists for third parties employed to assist a lawyer in rendering legal advice." *Id.* at 247. However, "[t]he circumstances under which the exception applies are limited." *Dahl v. Bain Capital Partners, LLC*, 714 F. Supp. 2d 225, 227 (D. Mass. 2010).

"The first element that must be satisfied in order for the exception to apply is that 'the third party communications must be "necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit."'" *Columbia Data Prods., Inc.*, 2012 WL 6212898, at *15 (quoting *Dahl*, 714 F. Supp. 2d at 227-28 (quoting *Cavallaro*, 284 F.3d at 247-48) (additional citations omitted)). It is not enough that the attorney's ability to advise the client is improved by the assistance of the third party. Rather, the

5

involvement of the third party must serve some specialized purpose in facilitating the attorney's provision of legal advice to the client. *See Cavallaro*, 284 F.3d at 247-48; *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999) (attorney-client privilege did not protect communications between attorney and investment banker despite assumption that the communications significantly assisted the attorney in giving his client legal advice). Further, communications with the outside party must be made for the purpose of providing or obtaining legal rather than business advice. *See Dahl*, 714 F. Supp. 2d at 228; *see also Cavallaro*, 284 F.3d at 248-49.

    2. The work product doctrine

The work product doctrine, first recognized by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947), and partially codified in Federal Rule of Civil Procedure 23(b)(3), "'protects against disclosure of materials that a party, her attorney, or her representative prepares in anticipation of litigation[.]'" *Columbia Data Prods.*, *Inc.*, 2012 WL 6212898, at *11 (quoting *In re Grand Jury Subpoena*, 220 F.R.D. 130, 141 (D. Mass. 2004)). The work product doctrine serves the purpose of preserving "a 'zone of privacy' in which a party, his attorney, and in many cases his non-attorney 'representative' can prepare for litigation 'free from unnecessary intrusion by his adversaries.'" *In re Grand Jury Subpoena*, 220 F.R.D. at 141 (quoting *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998)). The First Circuit requires a close connection between the information for which work product protection is sought and litigation for which the information is procured. While a document that serves both a business and a litigation purpose may be protected as work product, *see Columbia Data Prods., Inc.*, 2012 WL 6212898, at *11 (quoting *Maine v. United States Dep't of the Interior*, 298 F.3d 60, 68 (1st Cir. 2002)),

> [i]t is not enough to trigger work product protection that the *subject matter* of a document relates to a subject that might conceivably be litigated. Rather, as the

> Supreme Court explained, the literal language of [Rule 26(b)(3)] protects
> materials *prepared for* any litigation or trial as long as they were prepared by or
> for a party to the subsequent litigation.

*United States v. Textron, Inc. & Subsidiaries*, 577 F.3d 21, 27 (1st Cir. 2009) (en banc) (quoting *Fed. Trade Comm'n v. Grolier Inc.*, 462 U.S. 19, 25 (1983) (emphasis in original)). In other words, documents that are prepared to aid a corporation with its compliance obligations, rather than because of pending or imminent litigation, are not protected by the work product doctrine. *See Lewis*, 266 F.R.D. at 440.

As a preliminary matter, the court rejects Defendants' reliance on the work product doctrine as a basis for withholding production of the documents listed in their privilege log. In support of their claim that Price Chopper prepared these documents in anticipation of litigation, Price Chopper points to an FLSA lawsuit filed against Price Chopper in Vermont in 1999 and decided on summary judgment in September 2000, and increased media attention regarding alleged misclassifications of managers at other grocery store chains (Dkt. No. 156 at 6). The FLSA Audit at issue here was commissioned in 2011, more than 10 years after judgment entered for Price Chopper in the Vermont FLSA suit (Dkt. No. 146-1), and some three to four years before the instant suit was filed (Dkt. No. 1). In view of the ten-year lapse in time between the favorable resolution of the Vermont case and the commission of the FLSA Audit, the court rejects Price Chopper's contention that the Vermont case caused Price Chopper to commission the FLSA Audit in anticipation of additional imminent FLSA litigation. The four-year lapse in time between Price Chopper's commission of the FLSA Audit and the filing of the instant case also defeats any claim that documents listed on Defendant's privilege log were created in anticipation of the instant litigation *See Lewis*, 266 F.R.D. at 440 (where FLSA audit was conducted a year before litigation commenced, documents were not created in anticipation of

litigation and were not protected work product); *Marceau v. IBEW Local 1269*, 246 F.R.D. 610, 614 (D. Ariz. 2007) (fact that litigation was not imminent supports argument that FLSA audit documents were not prepared in anticipation of litigation). "A generalized fear of litigation does not turn a compliance audit into attorney work product." *Lewis*, 266 F.R.D. at 441. Because it is evident from the timing of the FLSA Audit and the contents of the documents that the audit was commissioned for compliance purposes and not in connection with pending or imminent litigation, none of the documents related to the FLSA Audit are protected work product.

    3. Application of the attorney-client privilege

With these general principles in mind, the court turns to the specific documents in dispute. Defendants have invoked the attorney-client privilege for all of the documents listed in their privilege log (Dkt. No. 145-1). To the extent appropriate, the court has grouped documents into categories for purposes of evaluating Defendants' privilege claims. *See Rivera v. Kmart Corp.*, 190 F.R.D. 298, 302-04 (D.P.R. 2000).

    a. Privilege log entry No. 1

Privilege log entry No. 1 is a memorandum from employees in Price Chopper's human resources department to Price Chopper's General Counsel and another human resources employee (Dkt. No. 145-1). It is marked "Attorney-Client Privileged," and provides information and seeks legal advice from the corporation's General Counsel about matters within the scope of the duties of the authors of the document. Under *Upjohn*, this document is obviously privileged and was properly withheld in discovery as a protected attorney-client communication. *See Rivera*, 190 F.R.D. at 302-03.

    b. Privilege log entries Nos. 2-4

Privilege log entries Nos. 2-4 are emails among Price Chopper human resources employees. None of these documents is marked as privileged or confidential. The documents are not from Price Chopper's in-house counsel relaying legal advice to members of the human resources department. They are not requests to counsel for legal advice, nor, so far as appears from the face of the documents, do they reflect advice from the corporation's General Counsel or its legal department. *See In re Prograf Antitrust Litig.*, 2013 WL, at *2. While the communications are about matters within the scope of the employees' duties and responsibilities, there is nothing in the documents to indicate that the communications were made for the purpose of gathering information that would assist Price Chopper's attorneys to provide legal advice to Price Chopper. *See Lewis*, 266 F.R.D. at 444. Privilege log entry No. 2 addresses concerns about the applicability of the FLSA but is, at most, tangentially related to the FLSA Audit, while privilege log entries Nos. 3 and 4 make only brief references to the FLSA Audit. The court concludes that Defendants have not satisfied their burden of showing that these documents are protected by the attorney-client privilege. *See, e.g., Columbia Data Prods., Inc.*, 2012 WL 6212898, at *11. These documents must be produced to plaintiffs.[2]

    c.  <u>Privilege log entry No. 5</u>

Privilege log entry No. 4 is an April 17, 2011 email from one member of Price Chopper's human resources department to another member of the department and an April 18, 2011 response to the first email. The first email had as an attachment the document that is listed separately as privilege log entry No. 5, which is described in the privilege log as "Store Manager

---

[2] Privilege log entries Nos. 3 and 4 include discussion of a topic that may be completely unrelated to this case and may warrant confidential treatment. If this is so, Defendants may redact these documents to the extent they contain information not relevant to the claims presently before the court.

9

and Department Manager Discussion Points Prepared in Connection with Consultant's Analysis of Department Managers (Dkt. No. 154-1 at 2). There is no indication in privilege log entry No. 5, or in the email to which it was attached, that it was prepared at the direction of, or reviewed by, in-house counsel. There is no indication in the documents (or otherwise) that members of the human resources department sought legal advice about the content of the proposed discussion points. There is no indication in the document listed as privilege log entry No. 5 that the employees with whom the discussion points were to be reviewed would be told that the information being requested was confidential or was being gathered to enable Price Chopper's attorneys to provide legal advice to their client. *Contrast Upjohn*, 449 U.S. at 394 (questionnaires filled out by Upjohn employees privileged when employees were told they were being questioned in order that corporation could obtain legal advice and communications were considered and treated as "highly confidential"); *Deel v. Bank of Am.*, 227 F.R.D 456, 461 (W.D. Va. 2005) (draft of notice documents for employees were protected where documents showed that defendant sent the notice document to outside counsel and sought legal advice concerning the notice language). Further, "documents that contain 'information which is to be communicated to the public or others'. . . are not protected by the attorney-client privilege." *Am.'s Growth Capital, LLC v. PFIP, LLC*, Civil Action No. 12-12088-RGS, 2014 WL 1207128, at *3 (D. Mass. Mar. 24, 2014) (quoting *Pacamor Bearings, Inc. v. Minebea Co. Ltd.*, 918 F. Supp. 491, 510 (D.N.H. 1996); citing *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003) ("When otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality on which the privilege is premised.")). The discussion points in privilege log entry No. 5 were intended to be communicated to others, i.e., employees of Price Chopper, without, so far as appears from the

document, any caution to that audience about confidentiality or any indication that the information was being solicited so that Price Chopper's attorneys could provide legal advice to their client. For these reasons, privilege log entry No. 5 is not protected by the attorney-client privilege and must be produced.

### d. Privilege log entries Nos. 6 and 7

Privilege log entry No. 6 is an email from a human resources employee to a group of Price Chopper employees, including Price Chopper's General Counsel and a paralegal, convening a meeting to discuss a project outline – privilege log entry No. 7 – for the FLSA Audit (Dkt. No. 145-1). Distribution of the document appears limited to corporate employees with a need to know about the FLSA Audit. While the email and attachment do not indicate that they are confidential or subject to the attorney-client privilege, there is no reason to believe that either document was distributed to anyone other than the employees listed as recipients on the email. In *Deel*, the presiding district judge concluded that documents of this kind were sent to "facilitate legal services," were protected by the attorney-client privilege, and were properly withheld in discovery on this basis. *See Deel*, 227 F.R.D. at 460. This court concludes likewise. Defendants are not required to produce privilege log entries Nos. 6 and 7.

### e. Privilege log entry No. 8

Privilege log entry No. 8 is a proposal from the outside consultant defining the scope of the work to be performed by the consultant for Price Chopper, sent to an employee in the human resources department. The proposal provides that the purpose of the project is to assist Price Chopper's General Counsel in preparing legal advice for Price Chopper's senior management (Dkt. No. 145-1 at 2). It does not appear that Defendants disclosed the document to any Price Chopper employee other than the human resources employee who received the proposal and

Price Chopper's General Counsel. Plaintiffs contend they are entitled to view this document because the attorney-client privilege does not protect the fact of consultation with counsel or the scope and nature of the engagement to provide, or to aid in providing, legal services (Dkt. No. 145 at 2 n.5). *See Baez-Eliza v. Instituto Psicoterapeutico do Puerto Rico*, 275 F.R.D. 65, 70-71 (D.P.R. 2011) (fact of legal consultation and purpose for which counsel was engaged were not protected by the attorney-client privilege) (citing *Humphreys, Hutcheson, & Moseley v. Donovan*, 755 F.2d 1211, 1219 (6th Cir. 1985); *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 603 (8th Cir. 1978); *Howell v. Jones*, 516 F.2d 53, 58 (5th Cir. 1975)). This principle applies, but only in part, to privilege log entry No 8, which consists of 4 pages. The first page is a memorandum from a Price Chopper human resources employee to SHRS enclosing two copies of the client engagement agreement. The second page is the cover page from SHRS's proposal to Price Chopper. These pages disclose the fact of Mr. Kenneally's consultation with a third party for purposes of obtaining information to aid him in providing legal advice to his client, Price Chopper. These two pages of privilege log entry No. 8, which disclose nothing more than the fact of the consultation between Price Chopper's General Counsel and the outside consultant, are not privileged and must be produced. *See, e.g., Moseley*, 755 F.2d at 1219. Pages 3 through 4 set out the purpose of the consultation, followed by a proposed process for conducting the FLSA Audit. The paragraph on page 3 that describes the purpose of the consultation is not privileged and must be produced. *See id.* (scope and nature of employment is not privileged information).

The remainder of pages 3 and 4 of privilege log entry No. 8, which describe the process the consultant proposed to follow to provide information and assistance that would aid Price Chopper's General Counsel in analyzing a legal issue, is protected by the attorney-client

privilege and may be redacted. Price Chopper's former General Counsel has attested that Price Chopper Human Resources employees sent him a memorandum seeking legal advice (privilege log entry No. 1) that caused him to decide that it was necessary to seek assistance from an outside consultant so that he could provide competent legal advice to the company about the questions raised in the memorandum (Dkt. No. 156-1 at 4, ¶¶ 7-9). In the opinion of the General Counsel, the outside consultant possessed knowledge and experience that surpassed the knowledge and experience available within the corporation, either in Price Chopper's human resources department or its legal department. The General Counsel believed that such knowledge and experience was critical to counsel's ability to provide sound legal advice to his client (*id.*, ¶¶ 8-9). The court has no basis or reason to doubt or second guess the General Counsel's assessment that he needed the services of a specialized consultant to be able provide competent legal advice about FLSA compliance to his client and does not have a basis to substitute its judgment for that of Price Chopper's General Counsel. *Cf. Mass. Mut. Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 293 F.R.D. 244, 253-54 (D. Mass. 2013) (if the purpose of the attorney-client privilege is to be served, the attorney and the client should have some degree of certainty about what is protected by the privilege). The court concludes, therefore, that the consultant was "'necessary, or at least highly useful, for the effective consultation between the client [Price Chopper] and the lawyer [Price Chopper's General Counsel] which the privilege is designed to permit.'" *Cavallaro*, 284 F.3d at 247 (quoting *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961)).

While Plaintiffs seek to characterize the classification of an employee or a particular position for FLSA purposes as a business decision, this is a decision that must comply with relatively complex statutory and regulatory requirements and guidance issued by the Department

of Labor.  The FLSA Audit was conducted to assist Price Chopper's General Counsel to advise his client such that the client could avoid legal liability for failure to comply with statutory and regulatory requirements.  "As such, [Price Chopper] clearly [commissioned the FLSA Audit] to facilitate legal services," *Deel*, 227 F.R.D. at 460, and substantive communications from the consultant to Price Chopper made for this purpose are protected by the attorney-client privilege.

As an alternative basis for production of documents as to which Defendants have asserted the attorney-client privilege, Plaintiffs contend that Defendants have forfeited reliance on the attorney-client privilege as to the FLSA Audit documents by pleading a good faith defense to the FLSA and related state law claims.  In their answer, Defendants assert as their third affirmative defense that "Plaintiffs' claims are barred to the extent that Defendants' actions have been taken in good faith in conformity with and reliance upon established rulings, administrative regulations and interpretations and/or advice of counsel" (Dkt. No. 60 at 20, ¶ 166).  As their seventh affirmative defense, Defendants assert that "Plaintiffs cannot establish that any of the acts or omissions of Defendants were willful under the FLSA or willful and intentional under the NYLL, MWA, CMWA, PMWA, or any other applicable state law.  By reason of the foregoing, Plaintiffs . . . are not entitled to liquidated damages under the FLSA, NYLL, MWA, CMWA, PMWA, or any other applicable state law" (*id.* at 21, ¶ 170).  Defendants purport to invoke these affirmative defenses without "assuming any burden of production or proof they would otherwise have" (*id.* at 19).

In support of their position Plaintiffs rely primarily on *Scott v. Chipotle Mexican Grill, Inc.*, 67 F. Supp. 3d 607 (S.D.N.Y.), an FLSA case where the defendant invoked the same good faith defenses as are here asserted by Price Chopper.  *See id.* at 609.  Concluding that Chipotle possessed advice of counsel about the job classifications being challenged (an issue that was

14

disputed), the court held that "[w]here the defendant has clearly benefited from the advice of counsel on the very issue on which it asserts good faith, it puts the relevant attorney-client communications at issue and thereby waives its privilege." *Id.* at 618. Defendants respond that the court should not find an implied waiver of the attorney-client privilege when they do not intend to base their good faith defense on the contents of the Audit Report and have not selectively disclosed portions of the report to support their claim of good faith (Dkt. No. 156 at 10-11).

The First Circuit has said that "courts should be cautious about finding implied waivers." *In re Keeper of Records*, 348 F.3d at 23. "Such waivers are almost invariably premised on fairness concerns." *Id.* at 24. A party may impliedly waive attorney-client confidentiality "if '(1) assertion of the privilege was a result of some affirmative act such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would . . . [deny] the opposing party access to information vital to his defense.'" *Savoy v. Richard A. Carrier Trucking, Inc.*, 178 F.R.D. 346, 350 (D. Mass. 1998) (quoting *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)).

> 'The courts have identified a common denominator in waiver by implication: in each case, the party asserting the privilege placed protected information in issue for personal benefit through some affirmative act, and the court found that to allow the privilege to protect against disclosure of that information' would have been unfair to the opposing party.

*In re Keeper of Records*, 348 F.3d at 24 (quoting J.B. Weinstein & M.A. Berger, Weinstein's Federal Evidence § 503.41[1] (J.M. McLaughlin ed. 1997)).

The Price Chopper defendants have not placed counsel's advice at issue by an affirmative act. They have asserted a defense of good faith, but they have not, at least thus far, invoked

15

advice of counsel as a basis for that defense. Instead, they have disclaimed any intention of relying on the Audit Report to support their good faith defense and identified non-privileged information (the Vermont FLSA opinion) on which they intend to rely to establish the defense. *Compare id.*, 348 F.3d at 24 (paradigmatic example of implied waiver occurs when party invokes advice of counsel as a defense). Where Defendants: (1) are not planning on using the substance of their counsel's opinions as a defense; (2) have consistently asserted the attorney-client privilege as to documents related to the FLSA Audit; and (3) have not selectively disclosed portions of counsel's advice to obtain an advantage in this litigation, there is no implied waiver of the attorney-client privilege. *See Cue, Inc. v. Gen. Motors LLC*, CIVIL ACTION NO 13-12647-IT, 2015 WL 4750844, at *8-9 (D. Mass. Aug. 10, 2015) (finding no implied waiver of privilege where defendant did not selectively disclose privileged information and did not intend to rely on advice of counsel to support good faith defense). However, this ruling is without prejudice; "nothing herein shall preclude [Plaintiffs] from renewing [their] waiver argument if [Defendants] attempt[] to raise an advice of counsel defense at any future point in this case." *Id.*, at *9.

For the foregoing reasons, Price Chopper is entitled to redact the portion of privilege log entry No. 8 that sets out the process the consultant intended to follow to provide commissioned services to Price Chopper.

### f. Privilege log entry No. 9

Privilege log entry No. 9 is the client engagement agreement signed by Price Chopper's General Counsel and the consultant, which discloses the fact, terms, and scope and nature of the consultant's employment by Price Chopper. The fact, scope, and nature of legal consultation are

not privileged.  *See Baez-Eliza*, 275 F.R.D. at 71.  Accordingly, the plaintiffs are entitled to production of privilege log entry No. 9.

      g.  <u>Privilege log entry No. 10</u>

Privilege log entry No. 10 is the SHRS Audit Report (Dkt. No. 145-1 at 4).  The Audit Report is protected by the attorney-client privilege for the reasons set forth above in connection with privilege log entry No. 8.  Accordingly, Price Chopper is not required to produce the document at this time.  This ruling is, again, without prejudice to Plaintiffs' renewal of their waiver argument if Defendants seek to rely on the FLSA Audit in support of their good faith defense.  *See Cue, Inc.*, 2015 WL 4750844, at *9.

      h.  <u>Privilege log entry No. 11</u>

Most of the documents at privilege log entry No. 11 are interview notes written by the SHRS consultant during interviews of Price Chopper employees that were conducted for purposes of preparing the Audit Report (Dkt. No. 145-1 at 4).  Also included is a document captioned "FLSA Talking Points for Department Managers," with handwritten notes, and a separate uncaptioned list of questions possibly intended for Store Managers.  In *Upjohn,* the Supreme Court addressed the issue of employee responses to corporate questioning.[3]  After Upjohn learned about illegal payments made by a subsidiary to secure business from a foreign government, the company, through its lawyers, conducted an internal factual investigation about the extent of so-called questionable payments so that the lawyers would be in a position to give legal advice to the company.  *Upjohn*, 449 U.S. at 386, 394.  The questionnaire Upjohn

---

[3] In *Upjohn*, employees filled out written questionnaires rather than answering questions posed to them orally.  *See Upjohn*, 449 U.S. at 386-87.  Here, it appears that employees were interviewed orally and notes taken of their responses to what was, in effect, a questionnaire about their duties, responsibilities, and hours worked.  This is a distinction without a difference.

employees were asked to fill out concerned matters within the scope of employees' corporate duties, identified the person gathering the information as Upjohn's General Counsel, and referred to the possible illegality of the payments about which information was sought. "A statement of policy accompanying the questionnaire clearly indicated the legal implications of the investigation[,]" and the questionnaire informed employees that Upjohn intended to comply with the laws banning illegal payments to foreign nationals. The questionnaires were considered highly confidential and were treated as such. *Id.* at 394-95. Based on these factors, the Court held that the questionnaires completed by Upjohn employees "must be protected against compelled disclosure." *Id.* at 395; *see also Deel*, 227 F.R.D. at 461 (identifying facts that were basis of Court's privilege conclusion in *Upjohn*).

In the instant case, as in *Deel*, Price Chopper's position was similar to Upjohn's, but it did not take the same forthright steps to inform its employees about the purposes for which it was gathering information. Privilege log entry No. 5, and the FLSA Talking Points for Department Managers document along with the uncaptioned list of questions in privilege log entry No. 11 constitute the evidence before the court of the information that was communicated to employees interviewed by SHRS. According to privilege log entry No. 5, Store Managers were to be told that Price Chopper was studying the Department Manager position to determine if the work these employees performed continued to meet the criteria that would qualify them as exempt under FLSA criteria, and that the company "wanted to make certain that we are properly compensating this group." Even less information was to be conveyed to Department Managers: they were to be told that the company periodically studied different pay groups to ensure that the company accurately understood the duties the employees performed and was properly compensating them. The FLSA was not to be mentioned to Department Managers. From the

18

separate uncaptioned list of questions to be posed to Store and Department Managers that appears in privilege lot entry No. 11, it appears that, when employees were interviewed, they may in fact have been given no context or reasons for the questions being posed to them.

So far as appears from the relevant documents, Price Chopper employees were not told that the company was soliciting information from them on behalf of Price Chopper's General Counsel; that the company was concerned about potential legal liability under the FLSA and related statutes; that the information was being gathered so that Price Chopper's counsel could provide legal advice to the company; or that the communications were highly confidential. A reasonable conclusion from privilege log entry No. 5 and the lists of questions that are included in privilege log No. 11 is that, following FLSA litigation involving other grocery store chains, Price Chopper did not want to alert its employees to the fact that it had concerns about FLSA compliance and that its General Counsel was seeking information for purposes of providing legal advice about the classification of the Department Manager position to the company. In this case, as in the *Deel* case, "the failure to provide proper notice means that [Price Chopper] cannot prevent the [Plaintiffs] from discovering [the notes of interviews with employees] based on the attorney-client privilege." *Deel*, 227 F.R.D. at 462.[4]

### III. CONCLUSION

For the foregoing reasons, the court GRANTS Plaintiffs' motion for a court order requiring production of the documents withheld by Defendants on the basis of the attorney-client privilege

---

[4] A one-page document captioned "Process Proposal: Department Manager FLSA Evaluation" is also included in privilege log entry No. 11. This document is similar, but not identical, to the portion of privilege log entry No. 8 that this court has ruled is protected by the attorney-client privilege and need not be produced. Because of this similarity and the likelihood that this document was not distributed outside of a small circle of Price Chopper employees involved in the FLSA Audit, Defendants may redact this page of privilege log entry No. 11.

and the work product doctrine, and rules as follows: Defendants are directed to produce the following documents listed in their privilege log within ten days of entry of this order:

- Privilege log entries 2-4;
- Privilege log entry 5;
- Privilege log entry 8 with the exception of the process proposal portion of the document, which may be redacted;
- Privilege log entry No. 9; and
- Privilege log entry No. 11.

Each party is to bear its own fees and costs.

It is so ordered.

Dated: February 8, 2017                    /s/ Katherine A. Robertson
                                           KATHERINE A. ROBERTSON
                                           U.S. MAGISTRATE JUDGE