## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **SHELLY J. DAVINE, JAMES E. WILLIAMS JACOB E. OGDEN, BETH A. FARRAR, and PHILIP CARDINALE on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE GOLUB CORPORATION, THE PRICE CHOPPER, INC., PRICE CHOPPER OPERATING CO. OF MASSACHUSETTS, INC., NEIL M. GOLUB, JEREL GOLUB, JOHN J. ENDERS, JR., CHRISTINE C. DANIELS, AND JEREL T. GOLUB,**<br><br>**Defendants.** | **Civil Action No.:**<br>**3:14-cv-30136-MGM** |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT, CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASSES, APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND <u>APPROVAL OF PROPOSED NOTICES OF SETTLEMENT</u>

## TABLE OF CONTENTS

INTRODUCTION .......................................................................................................... 1

I.     FACTUAL AND PROCEDURAL BACKGROUND........................................... 1

II.    DISCOVERY ...................................................................................................... 2

III.   MEDIATION AND SETTLEMENT NEGOTIATIONS .................................... 2

IV.   SUMMARY OF SETTLEMENT TERMS........................................................ 3

     A.     Settlement Payment ............................................................................ 3

     B.     Allocation Formula ............................................................................ 3

     C.     Settlement Classes ............................................................................. 4

     D.     Releases.............................................................................................. 4

     E.     Attorneys' Fees, Costs, and Enhancement Awards ........................... 5

     F.     Settlement Claims Administrator........................................................ 5

V.     CLASS ACTION SETTLEMENT PROCEDURE ............................................ 6

VI.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ................. 7

     A.     The Preliminary Approval Standard. ................................................. 8

     B.     The Settlement Falls Within the Range of Possible Approval. .............. 9

     C.     The Parties Engaged in Arm's Length Negotiations. .......................... 10

     D.     The Parties Exchanged Sufficient Discovery to Recommend Settlement. ........... 11

     E.     The Proponents of the Settlement Are Experienced in Similar Litigation. .......... 11

     F.     The Court Should Evaluate Any Objections to the Settlement at the Final Approval Stage................................................................................ 12

VII.  CONDITIONAL CERTIFICATION OF THE RULE 23 CLASSES IS APPROPRIATE................................................................................................ 12

     A.     Numerosity........................................................................................ 12

     B.     Commonality..................................................................................... 13

     C.     Typicality .......................................................................................... 13

D.      Adequacy ........................................................................................................... 14

E.      Certification Is Proper Under Rule 23(b)(3). ..................................................... 15

      1.      Common Questions Predominate ............................................................ 15

      2.      A Class Action Is a Superior Mechanism ............................................... 16

VIII.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL. ......... 17

IX.     THE NOTICE PLAN AND CLAIMS PROCESS ARE APPROPRIATE ...................... 18

CONCLUSION ................................................................................................................... 19

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ...............................................................................14, 15, 16

*Cerutti v. Frito Lay, Inc.*,
    777 F. Supp. 2d 920 (W.D. Pa. 2011) ..............................................................4

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ........................................................................8, 10

*City P'ship Co. v. A. Acq. Ltd. P'ship*,
    100 F.3d 1041 (1st Cir. 1996) ...........................................................................8

*Durrett v. Hous. Auth. of City of Providence*,
    896 F.2d 600 (1st Cir. 1990) .............................................................................7

*Dvornikov v. Landry's Inc.*,
    15 Civ. 13286, 2017 WL 1217110 (D. Mass. Mar. 31, 2017) .................................14

*Foster v. Kraft Foods Glob., Inc.*,
    285 F.R.D. 343 (W.D. Pa. 2012) ......................................................................4

*Garcia v. E.J. Amusements of New Hampshire, Inc.*,
    98 F. Supp. 3d 277 (D. Mass. 2015) .....................................................13, 14, 16

*Garcia-Rubiera v. Calderon*,
    570 F.3d 443 (1st Cir. 2009) .......................................................................12, 15

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ......................................................................................13

*Gintis v. Bouchard Transp. Co., Inc.*,
    596 F.3d 64 (1st Cir. 2010) .............................................................................17

*Hill v. State St. Corp.*,
    09 Civ. 12146, 2015 WL 127728 (D. Mass. Jan. 8, 2015) .................................8, 19

*Hochstadt v. Bos. Sci. Corp.*,
    708 F. Supp. 2d 95 (D. Mass. 2010) ..................................................8, 9, 10, 11

*Lapan v. Dick's Sporting Goods, Inc.*,
    13 Civ. 11390, 2015 WL 8664204 (D. Mass. Dec. 11, 2015) ............................11, 18

*Lipsitt v. Plaud*,
    466 Mass. 240, 994 N.E.2d 777 (2013) .............................................................4

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
   216 F.R.D. 197 (D. Me. 2003) ...............................................................................19

*In re Lupron Mktg. & Sales Practices Litig.*,
   345 F. Supp. 2d 135 (D. Mass. 2004) ......................................................................9

*In re Lupron Mktg. & Sales Practices Litig.*,
   677 F.3d 21 (1st Cir. 2012) .....................................................................................8

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*,
   270 F.R.D. 45 (D. Mass. 2010) ..............................................................8, 9, 12, 14

*McLaughlin v. Liberty Mut. Ins. Co.*,
   224 F.R.D. 304 (D. Mass. 2004) ......................................................................13, 16

*O'Donnell v. Robert Half Int'l, Inc.*,
   534 F. Supp. 2d 173 (D. Mass. 2008) ....................................................................10

*Overka v. Am. Airlines, Inc.*,
   265 F.R.D. 14 (D. Mass. 2010) .........................................................................14, 15

*Palmier v. Golub Corp.*,
   No. 99 Civ. 93 (D. Vt. Sept. 20, 2000) ..................................................................10

*In re Puerto Rican Cabotage Antitrust Litig.*,
   269 F.R.D. 125 (D.P.R. 2010) ...............................................................................8, 9

*In re Relafen Antitrust Litig.*,
   218 F.R.D. 337 (D. Mass. 2003) .............................................................................17

*Saunders v. Getchell Agency, Inc.*,
   No. 13 Civ. 00244, 2015 WL 1292594 (D. Me. Mar. 23, 2015) .............................17

*Scott v. Chipotle Mexican Grill, Inc.*,
   No. 12 Civ. 8333, 2017 WL 1287512 (S.D.N.Y. Mar. 29, 2017) ............................10

*Torrezani v. VIP Auto Detailing, Inc.*,
   318 F.R.D. 548 (D. Mass. 2017) ........................................................................13, 15

*Tyson Foods Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ...........................................................................................15

*Vargas v. Spirit Delivery & Distrib. Servs., Inc.*,
   No. 13 Civ. 12635, 2017 WL 1115163 (D. Mass. Mar. 24, 2017) ..........................16

*Venegas v. Glob. Aircraft Serv., Inc.*,
   159 F. Supp. 3d 93 (D. Me. 2016) ....................................................................13, 14, 15

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)............................................................................................................13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23................................................................................................ *passim*

Herbert B. Newberg & William B. Rubenstein,
    *Newberg on Class Actions* (5th ed.)................................................................. 6, 7-8

## INTRODUCTION

This action involves claims for unpaid overtime brought by allegedly misclassified Price Chopper Department Managers ("DMs") under the Fair Labor Standards Act ("FLSA") and various state wage laws.  After several years of litigation, the Parties have reached an agreement to resolve the claims on a class and collective basis for a maximum settlement payment of $6,500,000.  As set forth below, the proposed settlement satisfies all of the criteria for preliminary approval under federal law.

The Parties respectfully request an order: (1) granting preliminary approval of the Joint Stipulation of Settlement and Release (the "Agreement"),[1] attached as Exhibit A to the Declaration of Justin M. Swartz in Support of Motion for Preliminary Approval of Class and Collective Action Settlement ("Swartz Decl.");[2] (2) certifying the settlement classes and appointing Plaintiffs' counsel as Class Counsel under Federal Rule of Civil Procedure 23; (3) approving the proposed Notices of Class and Collective Action Settlement and Claim Form (together, "Notices"), attached to the Swartz Decl. as Exhibits B & C, and the proposed reminder postcard, attached to the Swartz Decl. as Exhibit E, and directing their distribution; and (4) approving the Parties' proposed schedule for final approval.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs worked as DMs at Price Chopper grocery stores in Massachusetts, New York, Connecticut, Pennsylvania, Vermont, and New Hampshire.  They allege that Defendants misclassified them as exempt from overtime protections and improperly denied them overtime compensation for hours that they worked over forty in many workweeks.

---

[1]      Unless otherwise indicated, all capitalized terms have the definitions set forth in the Agreement.

[2]      Unless otherwise stated, all exhibits are attached to the Swartz Decl.

Plaintiff Shelly Davine filed this lawsuit in the U.S. District Court for the District of

Massachusetts on July 30, 2014, bringing FLSA and Massachusetts Wage Act ("MWA") claims.

ECF No. 1.  On August 6, 2014, Davine, along with James Williams, Jacob Ogden, Beth Farrar,

and Philip Cardinale (collectively, "Named Plaintiffs"), filed a First Amended Complaint, adding

claims on behalf of DMs who worked in New York, Pennsylvania, and Connecticut.  ECF No.

11.[3]

On November 19, 2014, Plaintiffs filed a motion for FLSA conditional certification,

which the Court granted.  ECF No. 74.  After notice issued, 317 collective members joined the

lawsuit.  Swartz Decl. ¶ 16.

## II.   DISCOVERY

The parties engaged in extensive discovery prior to settling the lawsuit.  Defendants

requested written discovery from the Named Plaintiffs and thirty opt-in Plaintiffs, to which

Plaintiffs responded.  *Id.* ¶ 17.  Defendants also took the depositions of three Named Plaintiffs.  *Id.*

Defendants produced tens of thousands of pages of documents in response to Plaintiffs'

document requests regarding its corporate policies; emails from its corporate custodians, Named

Plaintiffs' managers, and the Named Plaintiffs; pay records; and personnel records.  *Id*. ¶ 18.

The Parties engaged in discovery litigation regarding certain documents that Defendants

withheld on the basis of privilege and ESI that Plaintiffs requested for opt-in Plaintiffs and

certain Defendants before their depositions.  *See* ECF Nos. 145-147, 149, 156-165, 185-187.

## III.   MEDIATION AND SETTLEMENT NEGOTIATIONS

The Parties made two attempts to resolve the lawsuit through mediation.  After the first

attempt failed, on May 11, 2016, the Parties returned to mediation with Hunter Hughes, Esq., an

---

[3]      On September 29, 2014, Plaintiffs filed a Second Amended Complaint that removed
several of the individual defendants.  ECF No. 52.

experienced employment law mediator in December 2016.  Swartz Decl. ¶ 20.  After the second

meditation, the Parties continued to negotiate with Mr. Hughes's assistance, until April 13, 2017,

when they reached agreement on the material terms of a settlement and executed a term sheet.  *Id.*

 In advance of each mediation, the Parties exchanged information to assist them to

evaluate the damages.  Swartz Decl. ¶ 21.  Plaintiffs' counsel hired an expert, Hemming Morse,

LLP,[4] to assist them to evaluate the compensation and time data that Defendants had provided.

*Id.*

## IV. SUMMARY OF SETTLEMENT TERMS

### A. Settlement Payment

 Defendants have agreed to pay a maximum of $6,500,000 to cover: (1) all amounts to be

paid to Participating Class Members; (2) the Settlement Claims Administrator's fees and costs;

(3) Court-approved attorneys' fees and costs; (4) Court-approved Service Awards; and (5) the

Opt-In Fund (defined below).  Ex. A (Agreement) ¶¶ 1.15, 1.18.

### B. Allocation Formula

 Under the allocation formula, Participating Class Members will be paid according to the

number of weeks they worked in the Relevant Period, whether they previously filed a consent to

join the case, and the state in which they worked.  *See* Ex. A (Agreement) ¶ 3.4.

 The claims of the Named Plaintiffs and Opt-In Plaintiffs will be paid out of a common

fund of $1,500,000 (the "Opt-In Fund").  *Id.* ¶ 3.4(A).  The claims of the Putative Class

Members will be paid out of the Net Settlement Fund.  *Id.* ¶ 3.4(C).  Putative Class Members

who worked in Massachusetts or Pennsylvania will be assigned an additional 1/2 point per

---

[4] Founded in 1958, Hemming Morse, LLP is a national firm leading the accounting
industry in Forensic and Financial Consulting Services, as well as Financial and Compliance
Auditing of Employee Benefit Plans.  *See* http://www.hemming.com/firm/firm-overview/

workweek in recognition that Massachusetts authorizes treble damages,[5] and Pennsylvania does not recognize the fluctuating workweek defense.[6]

### C.     Settlement Classes

Putative Class Members consist of all current and former Department Managers (other than the Named Plaintiffs and Opt-In Plaintiffs):

1.  In the Commonwealth of Massachusetts during the period from July 30, 2011 through December 1, 2016;

2.  In the State of New York during the period from July 30, 2008 through December 1, 2016;

3.  In the State of Pennsylvania during the period from July 30, 2011 through December 1, 2016; and

4.  In the State of Connecticut during the period from July 30, 2012 through December 1, 2016.

*See* Ex. A (Agreement) ¶ 1.27.

Opt-In Plaintiffs are the Named Plaintiffs and any and all current and former Department Managers who were classified as exempt employees and employed by Price Chopper during the period from July 30, 2011 through and including December 1, 2016, and who filed a consent to participate in the Litigation that has not been stricken.  *Id.* ¶ 1.23.

### D.     Releases

Plaintiffs and each Putative Class Member who receives Notice of the Settlement will release the Released Rule 23 Claims that accrued while they were employed in a Covered Position during the applicable Relevant Period through December 1, 2016.  Ex. A (Agreement) ¶ 4.1(A).  All Participating Class Members, by signing and cashing their Settlement Checks, will also release the Released FLSA claims that accrued while the Participating Class Member was

---

[5]     *See Lipsitt v. Plaud*, 466 Mass. 240, 245-46, 994 N.E.2d 777, 783 (2013).

[6]     *See Foster v. Kraft Foods Glob., Inc.*, 285 F.R.D. 343, 348 (W.D. Pa. 2012); *Cerutti v. Frito Lay, Inc.*, 777 F. Supp. 2d 920 (W.D. Pa. 2011).

employed in a Covered Position during the applicable Relevant Period through December 1, 2016. *Id.* ¶ 4.1(B).

E.     **Attorneys' Fees, Costs, and Enhancement Awards**

Plaintiffs' counsel will apply for up to one-third of the settlement for their attorneys' fees plus reimbursement of up to $75,000 of their out-of-pocket costs.  Ex. A (Agreement) ¶ 3.2. Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), Plaintiffs will move for Court approval of their attorneys' fees and costs simultaneously with a Motion for Final Approval of the Settlement.

In exchange for signing a general release of all claims and in recognition of their services to the class, the Settlement Agreement provides for Service Awards of $10,000 each to the Named Plaintiffs.  *Id.* ¶ 3.3.  Plaintiffs will move for approval of the Service Awards with their Motion for Final Approval of the Settlement.

F.     **Settlement Claims Administrator**

The Parties have selected CPT Group, a third-party Settlement Claims Administrator ("Claims Administrator"), to send the Notices and Claim Form to Class Members and to distribute checks to Participating Class Members.  Ex. A (Agreement) ¶ 1.31.  The Claims Administrator's fees and costs will be paid out of the Gross Settlement Amount.  *Id.*

The Notices will advise FLSA Opt-In Plaintiffs and Putative Class Members of their right to exclude themselves from or object to the settlement and how to do so.  *See* Ex. B (Class Member Notice) ¶¶ 10, 14; Ex. C (Opt-In Plaintiff Notice) ¶¶ 9, 13; Ex. E (Reminder Postcard). The deadline for opting out or objecting is 45 days from the mailing of the Notices or 30 days from re-mailing for any Class Member whose Notice is returned undeliverable.  Ex. A (Agreement) ¶ 2.5(A).

## V.      CLASS ACTION SETTLEMENT PROCEDURE

Settlement approval under Federal Rule of Civil Procedure 23 is a three step process:

1.      Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2.      Dissemination of mailed and/or published notice of settlement to all affected class members; and

3.      A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); Herbert B. Newberg & William B. Rubenstein, *Newberg on Class Actions* ("Newberg"), §§ 13.10, *et seq.* (5th ed.).  This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of the class's interests.

The Parties respectfully submit the following proposed schedule for final resolution of this matter for the Court's consideration and approval:

1.      Within ten (10) business days of the Preliminary Approval Order, Defendants will provide the Claims Administrator with the Database of contact information for Class Members.  Ex. A (Agreement) ¶ 2.4(A).

2.      Within twenty (20) business days of receipt of the Database, the Claims Administrator will mail the Notices to all FLSA Opt-In Plaintiffs and Putative Class Members, via First Class United States Mail, to their Last Known Address with an enclosed postage pre-paid return envelope addressed to the Claims Administrator.  *Id.* ¶¶ 2.4(B), (C).  Any Notice returned as undeliverable shall be traced by the Claims Administrator using reasonable means to obtain a new address or addresses and re-mailed by First Class United States Mail.  *Id.*

3.      Putative Class Members will have forty-five (45) days after the Claim Form mailing date to submit a Claim Form or, if the Claims Administrator re-mails the Notice because the first mailing was returned as undeliverable, thirty (30) days after the re-mailing.  *Id.* ¶ 2.4(B).

4.      Within twenty (20) days of the mailing of the Notices and Claim Forms, the Claims Administrator will mail the Court-approved Reminder Notice.  *Id.* ¶ 2.4(D).

5.      Class Members will have forty-five (45) days after the mailing of the Notices and Claim Forms to submit an Opt-Out Request or object, or for any Class Member whose Notice was returned undeliverable, thirty (30) days of the date of the mailing for which the correct address is identified. *Id.* ¶ 2.5(A).

6.      A Final Fairness hearing will be held as soon as is convenient for the Court after the end of the opt-out period but in no event earlier than ninety (90) days from the date the Preliminary Approval Order is signed in accordance with the Class Action Fairness Act. *Id.* ¶ 2.7.

7.      No later than fifteen (15) calendar days before the Fairness Hearing, Plaintiffs will submit a Motion for Judgment and Final Approval. *Id.*

8.      After the Fairness Hearing, if the Court grants the Motion for Final Approval of the Settlement, the Court will issue a Final Order and Judgment.  If no appeal is taken from the Court's Final Order and Judgment, the Effective Date of the Settlement is the date thirty-five (35) days after entry of the Court's Order Granting Final Approval of the Settlement. *Id.* ¶ 1.11(A).  If an individual or party appeals the Court's Final Order and Judgment, the Effective Date shall be the date on which all such appeals are resolved in favor of final approval. *Id.* at ¶ 1.11(B).

9.      Within fifteen (15) business days of the Effective Date, Defendants will deposit all Court-approved amounts for attorneys' fees, costs and service awards to the Named Plaintiffs, as well as the amount of the Opt-In Fund, into a Qualified Settlement Fund ("QSF"). *Id.* ¶¶ 3.1(A), 3.2(B), and 3.3(A).

10.     Within thirty (30) business days of (a) receiving the information from the Settlement Administrator necessary to calculate and process the Employer Payroll Taxes and total amount of payments for Participating Class Members (other than the Named Plaintiffs and Opt-In Plaintiffs) who properly and timely file a Claim Form, or (b) the Effective Date, whichever is later, Defendants will deposit such funds into the QSF. *Id.* ¶ 3.1(B).

11.     Within ten (10) business days after receiving funds from Defendants, the Claims Administrator will mail Settlement Payments to Participating Class Members. *Id.* ¶ 3.1(C).  Participating Class Members will have ninety (90) days to cash their Settlement Payments. *Id.* ¶ 3.1(E).

## VI.      **PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE**

The law favors compromise and settlement of class action suits.  *See Durrett v. Hous. Auth. of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990) (noting "the clear policy in favor of encouraging settlements" (internal quotation marks omitted)); William B. Rubenstein,

Newberg on Class Actions (5th Ed.) § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

### A.     The Preliminary Approval Standard.

When parties have settled a class action, Rule 23(e) requires the Court to approve the settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *City P'ship Co. v. A. Acq. Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). Courts make this finding through a "two-stage procedure," where "[f]irst, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing," and second "the final decision on approval is made after the hearing." *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 106-07 (D. Mass. 2010) (internal quotation marks omitted); *see also In re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21, 25 (1st Cir. 2012) (affirming class settlement where court applied the two stage procedure).

"At the preliminary approval stage, the Court need not make a final determination regarding the fairness, reasonableness and adequateness of a proposed settlement; rather, the Court need only determine whether it falls within the range of possible approval." *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 140 (D.P.R. 2010) (collecting cases).[7] As part of this inquiry, courts "examine the proposed settlement for obvious deficiencies before determining whether it is in the range of fair, reasonable, and adequate." *In re M3 Power Razor*

---

[7]     In considering whether a settlement is "fair reasonable, and adequate" on final approval, courts in this District review an array of factors, including the factors set forth in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974). *Hill v. State St. Corp.*, 09 Civ. 12146, 2015 WL 127728, at *6 (D. Mass. Jan. 8, 2015) ("[While] the First Circuit has not established a fixed test for evaluating the fairness of a settlement. . . . [c]ourts in this Circuit have considered []*"Grinnell"* factors in conducting this analysis." (internal quotation marks omitted). Plaintiffs will demonstrate that the settlement meets these factors in their Motion for Final Approval of Settlement.

*Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 62 (D. Mass. 2010) ("*In re MP3 Litig.*")
(citing Manual for Complex Litigation (4th ed.) § 21.632)).

"Courts and commentators . . . have developed a presumption that the settlement is within
the range of reasonableness when certain procedural guidelines have been followed." *In re M3
Litig.*, 270 F.R.D. at 62-63.  Those procedural guidelines are whether: "(1) the negotiations
occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement
are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re
Lupron Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004) (internal
quotation marks omitted); *accord In re M3 Litig.*, 270 F.R.D. at 62-63; *Hochstadt*, 708 F. Supp.
2d at 107.  When the Court makes these "four findings . . . preliminary approval is appropriate."
*In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. at 140.

Preliminary approval is the first step in the settlement process: it simply allows notice to
issue and for class members to object to or opt out of the settlement.  After notice issues, the
Court will be able to evaluate the settlement with the benefit of class members' input.

### B.     The Settlement Falls Within the Range of Possible Approval.

The proposed settlement falls within the range of possible approval.  By Plaintiffs'
counsel's estimation, the average award for Opt-In Plaintiffs will be approximately $4,700 and
the average award for Putative Class Members will be $2,200 (after fees, Service Awards, and
costs (including settlement administration costs) are subtracted out).  Swartz Decl. ¶ 22.  The
recovery represents approximately 42% of Putative Class Members' unpaid overtime at the half-
time rate if they had prevailed on class certification and the merits, and 80% of Opt-In Plaintiffs'
unpaid overtime at the half-time rate if they had avoided decertification and succeeded on the

merits.[8]  *Id.* ¶ 23.  "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  *Grinnell Corp.*, 495 F.2d at 455 n.2.

The recovery is significant given the risk that Plaintiffs would not have succeeded in certifying the state law classes and avoiding decertification.  Defendants would likely have argued that any differences among the eight departments at issue, store size, and store location raised individualized issues, and warranted decertification of the collective.  Although Plaintiffs would have opposed such arguments, certification of multiple state law classes in FLSA exemption cases is frequently denied.  *See, e.g.*, *Scott v. Chipotle Mexican Grill, Inc.*, No. 12 Civ. 8333, 2017 WL 1287512 (S.D.N.Y. Mar. 29, 2017) (de-certifying collective and denying class certification to employees classified as exempt executives); *O'Donnell v. Robert Half Int'l, Inc.,* 534 F. Supp. 2d 173, 181 (D. Mass. 2008) (finding plaintiffs failed to "identify a common policy" to which managers were subject and denying certification of staffing manager collective).

Although Plaintiffs believe that their claims are meritorious, a trial on the merits would involve risk as to both liability and damages.  Defendants would likely point to a 2000 case in which a district court in Vermont held that a Price Chopper Seafood manager was properly classified as exempt.  *See Palmier v. Golub Corp.*, No. 99 Civ. 93 (D. Vt. Sept. 20, 2000).

### C.    The Parties Engaged in Arm's Length Negotiations.

"[T]he time spent and the efforts made by parties on both sides during the settlement negotiations are persuasive indicators that the [settlement] was not the result of collusion but rather the result of negotiations conducted at arms' length."  *Hochstadt*, 708 F. Supp. 2d at 107.

---

[8]     The estimates are also net of any offset Defendants may be entitled to take for Sunday and holiday premium pay.

The Parties devoted significant time and effort to settlement negotiations, including attending two mediations and conducting ongoing negotiations after the second mediation. These facts support a finding that the negotiations were not collusive. *See Lapan v. Dick's Sporting Goods, Inc.*, 13 Civ. 11390, 2015 WL 8664204, at *1 (D. Mass. Dec. 11, 2015) ("The assistance of an experienced mediator, Hunter Hughes, reinforces that the Settlement Agreement is non-collusive.").

### D.      The Parties Exchanged Sufficient Discovery to Recommend Settlement.

There was sufficient discovery for the Parties and their counsel to evaluate the claims before settling. There is no "require[ment] that discovery be completed, but rather that sufficient discovery be conducted to make an intelligent judgment about settlement." *Hochstadt*, 708 F. Supp. 2d at 107.

As described above, the Parties reviewed written discovery from Defendants' corporate witnesses, from a sampling of Opt-In Plaintiffs, and from the Named Plaintiffs, and Defendants deposed three Named Plaintiffs. The Parties also analyzed Defendants' compensation data and time records with expert assistance. This discovery was "sufficient" to enable the Parties "to make an intelligent judgment about settlement." *Hochstadt*, 708 F. Supp. 2d at 107.

### E.      The Proponents of the Settlement Are Experienced in Similar Litigation.

The Parties are represented by experienced employment lawyers who have successfully prosecuted or defended numerous employment law class actions. *See* Swartz Decl. ¶¶ 7-12; Declaration of Kevin Kinne ("Kinne Decl.") ¶¶ 3-7; Ex. D (Jackson Lewis Background Information). This factor supports preliminary approval of the settlement. *See Hochstadt*, 708 F. Supp. 2d at 108.

**F.  The Court Should Evaluate Any Objections to the Settlement at the Final Approval Stage**.

Before notice has issued and class members have had an opportunity to object or opt out, "[t]he only practical way to ascertain the overall level of objection to the proposed settlement is for notice to go forward, and to see how many potential class members choose to opt out of the settlement class or object to its terms at the Final Fairness Hearing." *In re M3 Litig.*, 270 F.R.D. at 63.

**VII.  CONDITIONAL CERTIFICATION OF THE RULE 23 CLASSES IS APPROPRIATE.**

For settlement purposes, Plaintiffs seek to certify four Rule 23 Classes under Federal Rule of Civil Procedure 23(e).  *See supra* Section IV.C (setting forth Rule 23 Class definitions).

Under Rule 23, a class action may be maintained if all the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that:

(1)  the class is so numerous that joinder of all members is impracticable;
(2)  there are questions of law or fact common to the class;
(3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *Id.* at (b)(3).

**A.  Numerosity**

Numerosity is presumptively met where the class members number 40 or more.  *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009).  Here, each Rule 23 Class has more than 40 members.  Swartz Decl. ¶ 26.

### B.    Commonality

The proposed Settlement Classes satisfy the commonality requirement.  The
commonality inquiry looks to "whether the named plaintiff's claim and the class claims are so
interrelated that the interests of the class members will be fairly and adequately protected in their
absence."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Commonality
"depend[s] upon a common contention" that is of "such a nature that it is capable of classwide
resolution."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Here, the common question of whether Plaintiffs and Class Members were properly
classified as exempt employees "would resolve an issue that is central to the validity of each one
of the claims in one stroke."  *Id.*; *Torrezani v. VIP Auto Detailing, Inc.*, 318 F.R.D. 548, 554 (D.
Mass. 2017).  This common contention satisfies the commonality requirement for settlement
purposes.  *See, e.g.*, *Venegas v. Glob. Aircraft Serv., Inc.*, 159 F. Supp. 3d 93, 99 (D. Me. 2016)
(finding commonality for class of allegedly misclassified independent contractors where
"[l]iability will be driven by a common question: were the class members misclassified?");
*McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 309 (D. Mass. 2004) (commonality
established where "[c]ommon questions of law include whether [plaintiffs] were properly
classified as exempt . . . .").

### C.    Typicality

Plaintiffs' claims are typical of the class members they seek to represent.  The typicality
inquiry examines "whether the class representatives' claims have the same essential
characteristics as the claims of the other members of the class."  *Garcia v. E.J. Amusements of
New Hampshire, Inc.*, 98 F. Supp. 3d 277, 288 (D. Mass. 2015).[9] Typicality is satisfied where the

---

[9]     The commonality and typicality inquiries "tend to merge," but whereas "[c]ommonality
looks at the relationship among the class members generally. . . typicality focuses on the

named Plaintiffs' and class members' claims "arise out [of] the same practice" and are "based on

the same legal theory." *Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14, 18 (D. Mass. 2010);

*Torrezani*, 318 F.R.D. at 555. Typicality is met where, as here, Plaintiffs and class members'

claims arise from Defendants' classification of them as exempt executives and the Plaintiffs'

theory that this classification violated state overtime laws. *See Venegas*, 159 F. Supp. 3d at 99

(finding typicality where "[plaintiff's] legal theory—that the Defendants misclassified him—is

the same legal theory as the rest of the class").

### D.      Adequacy

Plaintiffs will "fairly and adequately protect the interests of the class." Fed. R. Civ. P.

23(a)(4). The adequacy inquiry examines whether: (1) the interests of the named plaintiffs

conflict "with the interests of any of the class members;" and (2) the named plaintiff has counsel

that is "qualified, experienced and able to vigorously conduct the proposed litigation."

*Dvornikov v. Landry's Inc.*, 15 Civ. 13286, 2017 WL 1217110, at *10 (D. Mass. Mar. 31, 2017)

(internal quotation marks omitted); *In re M3 Litig.*, 270 F.R.D. at 55.

Plaintiffs meet the adequacy requirement because there is no evidence that their interests

are antagonistic to the putative class members. Plaintiffs have fully participated in the litigation

of this matter understanding that the action was brought as a class action suit. Swartz Decl. ¶ 27.

In addition, Named Plaintiffs seek redress for the same violations of state overtime laws as the

members of the putative classes they seek to represent. *Amchem Prods., Inc. v. Windsor*, 521

U.S. 591, 625 (1997) (adequacy met where named plaintiffs "possess the same interest and suffer

the same injury as the class members").

---

relationship between the proposed class representative and the rest of the class." *Garcia*, 98 F.
Supp. 3d at 288.

Plaintiffs have selected counsel adequate to represent their interests.  Plaintiffs' counsel has vigorously prosecuted this litigation.  *Garcia-Rubiera*, 570 F.3d 443 at 460-61 (finding "no reason to question the adequacy of representation" where "plaintiffs and counsel have diligently pursued their rights"); *see also Venegas*, 159 F. Supp. 3d at 100 (finding class counsel adequate where he was involved in the case since inception and demonstrated "a commitment of time and resources to representing the class").  Plaintiffs' counsel are qualified and experienced employment lawyers.  Swartz Decl. ¶¶ 7-12; Kinne Decl. ¶¶ 3-7.

### E.  Certification Is Proper Under Rule 23(b)(3).

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Tyson Foods Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks omitted).  These requirements are met for settlement purposes here.

### 1.  Common Questions Predominate

Predominance requires that proposed classes be "sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods.*, 521 U.S. at 623.  Predominance "is satisfied where, notwithstanding individualized concerns, 'a sufficient constellation of common issues binds class members together.'"  *Overka*, 265 F.R.D. at 19 (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray,* 208 F.3d 288, 296 (1st Cir. 2000)).  "The heart of the predominance inquiry is whether the uncommon questions, outweigh the commonalities."  *Torrezani*, 318 F.R.D. at 556 (internal quotation marks omitted).

Here, Plaintiffs' common contention—that Price Chopper misclassified them as exempt workers and denied them overtime—is at the heart of the litigation and predominates over any

individual questions affecting only individual class members.  *See, e.g.*, *McLaughlin*, 224 F.R.D. at 311-12 (predominance satisfied by, *inter alia*, question of whether class members were properly classified as exempt).

### 2. A Class Action Is a Superior Mechanism

A class action is the most suitable mechanism to fairly, adequately, and efficiently resolve Class Members' claims.  Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action.[10]  Plaintiffs contend that each factor favors certification for settlement purposes.  First, individual class members have not expressed an interest in controlling the prosecution of the action, and Plaintiffs are not aware of any pending cases that have been brought against Defendants by class members on an individual basis.

Second, it makes good sense to concentrate the claims in this Court, given the Court's familiarity with the proceedings in this litigation.  Litigation in this Court will also achieve economies of scale, conserve the resources of the judicial system, and avoid the waste and delay of repetitive proceedings and inconsistent adjudications of similar issues and claims.  *Vargas v. Spirit Delivery & Distrib. Servs., Inc.*, No. 13 Civ. 12635, 2017 WL 1115163, at *13 (D. Mass. Mar. 24, 2017) (finding superiority and noting that "[m]ultiple actions would result in increased expense for the parties and the Court as the result of duplicative discovery, multiple court proceeding"); *see also Garcia*, 98 F. Supp. 3d at 292 (finding superiority where "a class action lawsuit would be a better option than multiple individual actions, coordinated individual actions,

---

[10]     These include: the class members' interests in individually controlling the prosecution or defense of separate actions; whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum; the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3). The final factor is not implicated by certification of a class for settlement purposes only.  *Amchem Prods.*, 521 U.S. at 620.

consolidated individual actions, test cases, or any of the other known options"); *Saunders v. Getchell Agency, Inc.*, No. 13 Civ. 00244, 2015 WL 1292594, at *8 (D. Me. Mar. 23, 2015) ("[T]here is no sound basis to conclude that a multitude of individual lawsuits against [an employer] would be a superior process to a single class action of relatively modest size.").[11]

Moreover, a class action is superior because it would permit notice of the suit to issue to absent class members who may not know that their employment rights are at stake and would not otherwise bring suit. *In re Relafen Antitrust Litig.*, 231 F.R.D. at 71 ("[A] class action has to be unwieldy indeed before it can be pronounced an inferior alternative . . . to no litigation at all." (citing *Carnegie v. Household Intern., Inc.,* 376 F.3d 656, 661 (7th Cir.2004))).

## VIII.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL.

Rule 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets forth four criteria courts must consider in evaluating the adequacy of proposed counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The

---

[11]   The Court's finding of predominance for settlement purposes supports the superiority of the class action mechanism. *Gintis v. Bouchard Transp. Co., Inc.,* 596 F.3d 64, 67–68 (1st Cir. 2010) ("While superiority is a separate base to be touched, it is addressed by many of the considerations that inform a trial court's judgment call about how clearly predominant the common issues must be."); *In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 346 (D. Mass. 2003) (finding superiority where "[g]iven the predominance of common questions and evidence. . . resolution by class action would provide substantial savings in time, effort, and expense").

Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case." Fed. R. Civ. P. 23(g) advisory committee's note, 2003 amendments.

Plaintiffs' counsel satisfies these criteria. They have done substantial work identifying, investigating, litigating, negotiating, and settling Plaintiffs' and Class Members' claims, and are experienced in the area of class action employment litigation. Swartz Decl. ¶¶ 7-12; Kinne Decl. ¶ 4-7.

## IX.    THE NOTICE PLAN AND CLAIMS PROCESS ARE APPROPRIATE.

The Notices fully comply with due process and Federal Rule of Civil Procedure 23.

Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice that is practicable under the circumstances, including individual
> notice to all members who can be identified through reasonable effort. The notice
> must clearly and concisely state in plain, easily understood language:
>
> (i)      the nature of the action;
> (ii)     the definition of the class certified;
> (iii)    the class claims, issues, or defenses;
> (iv)     that a class member may enter an appearance through an attorney if the
>          member so desires;
> (v)      that the court will exclude from the class any member who requests
>          exclusion;
> (vi)     the time and manner for requesting exclusion; and
> (vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Notices satisfy each of these requirements. They are written in plain English and organized and formatted to be as clear as possible. They describe the allegations and terms of the Settlement, and inform Class Members about the allocation of attorneys' fees and costs, the process for opt-ing out of the settlement and filing an objection, and the date, time, and place of the Fairness Hearing. *See* Exs. B & C (Notices); *Lapan*, 2015 WL 8664204, at *3 (approving notice that "describes the terms of the settlement, informs the class about the allocation of

attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing.").

    "To satisfy due process, the notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Hill v. State St. Corp.*, No. 09 Civ. 12146, 2015 WL 127728, at *14 (D. Mass. Jan. 8, 2015) (internal quotation marks omitted).  While these Rule 23 and Due Process Clause standards "do not require that actual notice must be received by all class members," "the method of providing notice must be reasonably calculated to reach interested parties." *Id.* (internal quotation marks omitted).

    Notices will be sent to the last-known mail address of each Class Member within 20 days of the Court's Preliminary Approval Order.  Ex. A (Agreement) ¶ 2.4(C).  The Claims Administrator will take reasonable steps to obtain updated addresses for Class Members whose notices are returned as undeliverable.  *Id.* ¶ 2.4(E).  It is well established that "individualized notice by first-class mail ordinarily satisfies the requirement that class members receive the best notice practicable under the circumstances." *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 218 (D. Me. 2003).

## CONCLUSION

    For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of Settlement and enter the Proposed Order.

Dated: July 31, 2017
      New York, New York

                                    Respectfully submitted,
                                    **OUTTEN & GOLDEN LLP**

                                    */s/ Justin Swartz*
                                    Justin M. Swartz

                                    Justin M. Swartz (admitted *pro hac vice*)

Rachel Bien (admitted *pro hac vice*)
Michael N. Litrownik (BBO #680218)
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

**COHEN KINNE VALICENTI & COOK
LLP**
Kevin M. Kinne (BBO# 559004)
Benjamin K. Steffans (BBO# 568535)
28 North Street, 3rd Floor
Pittsfield, Massachusetts 01201
Telephone:  (413) 443-9399
kkine@cohenkinne.com
bsteffans@cohenkinne.com

***Attorneys for Plaintiffs, the Collective,
and the Proposed Classes***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the CM/ECF system will be sent electronically

to the registered participants as identified on the Notice of Electronic Filing.

Dated: July 31, 2017
      New York, New York

             By: <u>/s/ Justin Swartz</u>
                Justin Swartz (admitted *pro hac vice*)