# Exhibit A

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHELLY J. DAVINE, JAMES E. WILLIAMS, JACOB E. OGDEN, BETH A. FARRAR, and PHILIP CARDINALE on behalf of themselves and all others similarly situated, <br><br> **Plaintiffs,** <br><br> v. <br><br> THE GOLUB CORPORATION, THE PRICE CHOPPER, INC., and PRICE CHOPPER OPERATING CO. OF MASSACHUSETTS, INC., <br><br> **Defendants.** | Civil Action No.: 3:14-cv-30136-MGM <br><br><br> JOINT STIPULATION OF SETTLEMENT AND RELEASE |

This Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and between Shelly J. Davine, James E. Williams, Jacob E. Ogden, Beth A. Farrar and Philip Cardinale (collectively the "Named Plaintiffs"), individually and on behalf of the classes of individuals that they seek to represent ("Class Members"), (collectively with Named Plaintiffs and Class Members, the "Plaintiffs") and The Golub Corporation, The Price Chopper, Inc., and Price Chopper Operating Co. of Massachusetts, Inc. ("Defendants") (together with Plaintiffs, the "Parties").

## RECITALS

WHEREAS, the Named Plaintiffs filed suit against Defendants in the United States District Court for the District of Massachusetts, Civil Action No. 3:14-cv-30136-MGM, currently captioned *Davine, et al. v. The Golub Corp., et al.*, in which they claim that Defendants misclassified them as exempt employees and owe them wages and overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). The Named Plaintiffs also assert claims against Defendants under the wage and hour laws of Massachusetts, New York, Connecticut and Pennsylvania for the alleged misclassification and failure to pay wages and overtime compensation to Plaintiffs employed in those states ("the Litigation"); and

WHEREAS, the purpose of this Agreement is to settle fully and finally all Released Claims (as hereinafter defined) between Plaintiffs and Defendants, including all claims asserted in the Litigation; and

WHEREAS, Defendants deny all of the allegations made by the Plaintiffs in the Litigation and deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding

-1-

any liability or damages whatsoever, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, on December 12, 2016, the Parties participated in a mediation session of this matter in Atlanta, Georgia, which was conducted by experienced class action mediator Hunter Hughes, and following further discussions with the mediator subsequently reached an accord resulting in this Agreement; and

WHEREAS, Plaintiffs' Counsel analyzed and evaluated the merits of the claims made against Defendants in the Litigation, conducted interviews with putative class and collective members, responded to written discovery, defended the depositions of three Named Plaintiffs, obtained and reviewed thousands of documents relating to Plaintiffs' job duties and Defendants' compensation policies, and analyzed payroll data, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that any recovery would not occur for several years, and that there was a risk of future decertification, Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Plaintiffs.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1.    DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1    Agreement.  "Agreement" means this Joint Stipulation of Settlement and Release.

1.2    Acceptance Period.  "Acceptance Period" means the 90 days that a Class Member has to sign and cash a Settlement Check.

1.3    Claim Form. "Claim Form" means Exhibit A, the form approved by Defendants and Class Counsel and subject to Court approval, which each Class Member must complete in full and return, via first class mail with a postmark, email, or facsimile on or before the date forty-five (45) days following mailing, or thirty (30) days following a re-mailing, of the Notices (as defined herein), to recover a portion of the Settlement proceeds.

1.4    Class Counsel.  "Class Counsel" or "Plaintiffs' Counsel" means Outten & Golden LLP and Cohen Kinne Valicenti & Cook LLP.

1.5    Class Members.  "Class Members" means the Named Plaintiffs, the Opt-In Plaintiffs, and the Putative Class Members.

1.6    Court.  "Court" means the United States District Court for the District of Massachusetts.

1.7     Days. "Days" means calendar days unless otherwise specified herein.

1.8     Defendants. "Defendants" or "Price Chopper" means The Golub Corporation, The Price Chopper, Inc., and Price Chopper Operating Co. of Massachusetts, Inc. For purposes of the release of any claims under this Agreement, including but not limited to the releases set forth in paragraph 4 below, "Defendants" or "Price Chopper" shall mean The Golub Corporation, The Price Chopper, Inc., Price Chopper Operating Co. of Massachusetts, Inc., and their parents, subsidiaries, affiliates, predecessors, successors and assigns, and each of their respective shareholders, members, officers, directors, employees, agents, and representatives, including but not limited to Neil M. Golub and Jerel Golub.

1.9     Defendants' Counsel. "Defendants' Counsel" means William J. Anthony and Vincent E. Polsinelli of Jackson Lewis P.C. For purposes of providing any notices required under this Agreement, Defendants' Counsel shall refer to William J. Anthony.

1.10     Department Managers, DMs. "Department Managers" or "DMs" means Department Managers (a/k/a Team Leaders) who are or were employed by Price Chopper as exempt Department Managers at Price Chopper stores.

1.11     Effective Date. "Effective Date" shall be the last of the following dates:

(A)     If there is no appeal of the Court's Order Granting Final Approval of the Settlement, the date 35 days after entry of such Order; or

(B)     if there is an appeal of the Court's Order Granting Final Approval of the Settlement, the day after all appeals are resolved in favor of final approval.

1.12     Employer Payroll Taxes. "Employer Payroll Taxes" means all tax withholdings an employer is required to make arising out of or based upon the payment of employment compensation in this Litigation, including FICA, FUTA, and SUTA obligations.

1.13     Fairness Hearing. "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

1.14     Final Approval Order. "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, distribution of the Settlement Checks and Service Awards, and Dismissal of the Litigation.

1.15     Gross Settlement Amount. "Gross Settlement Amount" means the maximum amount of $6,5000,000.00, including any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Class Members, and any Court-approved Service Awards. Except for Employer Payroll Taxes, Defendants will not be required to pay any more than the gross total of Six Million, Five Hundred Thousand and No/100ths Dollars ($6,5000,000.00). The Gross Settlement Amount covers and includes all local, state and federal Wage and Hour claims of all Named Plaintiffs, Opt-in Plaintiffs and Putative Class Members, all attorneys' fees and expenses of Class Counsel, all service awards to the Named Plaintiffs and the fees and expenses of the Settlement Claims Administrator.

1.16    Litigation.  "Litigation" means the claims represented in the class and collective action Second Amended Complaint alleging violations of the FLSA and the wage and hour laws of Massachusetts, New York, Connecticut and Pennsylvania captioned *Davine, et al., v. The Golub Corp., et al.*, Civil Action No. 3:14-cv-30136-MGM.

1.17    Named Plaintiffs.  "Named Plaintiffs" means Shelly J. Davine, James E. Williams, Jacob E. Ogden, Beth A. Farrar and Philip Cardinale.

1.18    Net Settlement Fund.  "Net Settlement Fund" means the remainder of the Gross Settlement Amount after deductions for: (1) the Settlement Claims Administrator's fees and costs; (2) Court-approved attorneys' fees and costs for Class Counsel; (3) Court-approved Service Awards to Named Plaintiffs; and (4) the Opt-In Fund as specified herein.

1.19    Notice or Notices.  "Notice" or "Notices" means the Court-approved Notice of Proposed Settlement of Class Action and Collective Action Lawsuit and Fairness Hearing and the Court-approved Notice of Proposed Settlement of FLSA Collective Action Lawsuit and Fairness Hearing.

1.20    Objector.  "Objector" means an individual who files an objection to this Agreement, and does not include any individual who opts-out of this Agreement.

1.21    Opt-out Statement.  "Opt-out Statement" is a written signed statement that an individual Class Member has decided to opt-out and not be included in this Agreement.

1.22    Opt-In Fund.  "Opt-In Fund" means the One Million, Five Hundred Thousand and No/100ths Dollars ($1,5000,000.00) common fund from which the Named Plaintiffs' and Opt-in Plaintiffs' claims will be paid in their prorated portions.

1.23    Opt-In Plaintiffs.  "Opt-In Plaintiffs" means the Named Plaintiffs and any and all current and former Department Managers who were classified as exempt employees and employed by Price Chopper during the period from July 30, 2011 through and including December 1, 2016, and who have filed a consent to participate in the Litigation that has not been stricken.

1.24    Participating Class Members.  "Participating Class Members" shall mean, collectively, Named Plaintiffs, Opt-in Plaintiffs, and all Putative Class Members who sign and return a timely Claim Form.

1.25    Parties.  "Parties" shall mean, collectively, Named Plaintiffs, Opt-in Plaintiffs, Putative Class Members, and Defendants.

1.26    Plaintiffs.  "Plaintiffs" shall mean Named Plaintiffs, Opt-in Plaintiffs, and Putative Class Members.

1.27    Putative Class Members.  "Putative Class Members" shall mean all current and former Department Managers (other than the Named Plaintiffs and Opt-In Plaintiffs) in the Commonwealth of Massachusetts during the period from July 30, 2011 through

December 1, 2016, in the State of New York during the period from July 30, 2008 through December 1, 2016, in the State of Pennsylvania during the period from July 30, 2011 through December 1, 2016, and in the State of Connecticut during the period from July 30, 2012 through December 1, 2016. The parties agree that there are approximately 1,150 Putative Class Members.

1.28    Preliminary Approval Order. "Preliminary Approval Order" means the Order entered by the Court preliminarily approving the terms and conditions of this Agreement, and directing the manner and timing of providing Notices to the Class Members.

1.29    Qualified Settlement Fund or QSF. "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator for the Settlement Amount paid by Defendants. The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval. Interest, if any, earned on the QSF will become part of the Gross Settlement Amount.

1.30    Reminder Notice or Reminder Notices. The "Reminder Notice" or "Reminder Notices" means the Court-approved Reminder Notice of Proposed Settlement of Class Action and Collective Action Lawsuit and Fairness Hearing and the Court-approved Reminder Notice of Proposed Settlement of FLSA Collective Action Lawsuit and Fairness Hearing, which shall be in the form of a limited reminder postcard.

1.31    Relevant Period. For purposes of Section 3.4(A), "Relevant Period" means: (1) for Opt-In Plaintiffs who worked in states other than Connecticut, Massachusetts, New York, and Pennsylvania, the three year period prior to the date on which they filed their consent to join form; (2) for Opt-In Plaintiffs who worked in Connecticut, Massachusetts, New York, and Pennsylvania, the longer of: (a) the three year period prior to the date on which their consent to join form was filed, or (b) the applicable state law limitations period as set forth in Section 1.27 above.

1.32    Settlement Amount. The "Settlement Amount" includes: (1) the amounts payable to Participating Class Members from the Net Settlement Fund; (2) the Settlement Claims Administrator's fees and costs; (3) Court-approved attorneys' fees and costs for Class Counsel; (4) Court-approved Service Awards to Named Plaintiffs; (5) the Opt-In Fund; and (6) Employer Payroll Taxes.

1.33    Settlement Claims Administrator. The "Settlement Claims Administrator" will be CPT Group, which was selected by Class Counsel and approved by Defendants.

1.34    Settlement Checks. "Settlement Checks" means checks issued to Class Members for their share of the Opt-In Fund and Net Settlement Fund calculated in accordance with this Agreement.

## 2.    APPROVAL AND CLASS NOTICE

2.1    Binding Agreement. This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

**2.2**    Retention of the Settlement Claims Administrator.  Class Counsel has selected CPT Group as the Settlement Claims Administrator.  The Settlement Claims Administrator will be responsible for locating Class Members through all reasonable efforts; mailing of Notices, Reminder Notices, and Claim Forms to Class Members in accordance with the Court's Preliminary Approval Order; administering any opt-out requests and objections from Class Members; responding to Class Member inquiries; resolving disputes relating to Class Members' workweeks worked and settlement share amounts; reporting on the state of the Settlement to the Parties; distributing Service Awards; calculating the Settlement Checks in accordance with the Court's Final Approval Order; distributing Settlement Checks to Class Members; calculating Employer Payroll Taxes and remitting such funds to the appropriate taxing authorities; issuing tax forms (including IRS Forms W-2 and 1099) to the appropriate taxing authorities for any payments made pursuant to this Agreement; providing Claim Forms to Class Counsel for filing with the Court, and providing copies of the Claim Forms to Class Counsel; preparing a declaration regarding its due diligence in the claims administration process; providing counsel with any information related to the administration of the settlement upon request; and performing such other duties as the Parties may jointly direct or as are specified herein.

   (A)    The Parties will have equal access to the Settlement Claims Administrator and all information related to the administration of the settlement.  The Settlement Claims Administrator will provide regular reports to the Parties regarding the status of the mailing of the Notices, Reminder Notices, and Claim Forms to Class Members, the claims administration process, and distribution of the Settlement Checks.

   (B)    Defendants agree to cooperate with the Settlement Claims Administrator, provide accurate information, to the extent reasonably available, necessary to calculate the Settlement Checks, and assist the Settlement Claims Administrator in locating Class Members.

**2.3**    **Preliminary Approval Motion.**

   (A)    Within thirty (30) days after the execution of this Agreement, Named Plaintiffs will submit to Defendants a draft Motion for an Order Conditionally Certifying the Settlement Classes and Preliminarily Approving the Class Action Settlement ("Preliminary Approval Motion").  Named Plaintiffs will allow Defendants five business (5) days to review and comment on the Preliminary Approval Motion and agree to consider Defendants' comments in good faith.

   (B)    At the expiration of the review and comment period described in Section 2.3(A) above, Named Plaintiffs will file the Preliminary Approval Motion.  In connection with the Preliminary Approval Motion, Plaintiffs will submit to the Court proposed Notices and Claim Form; proposed Reminder Notices; a proposed distribution method for the Settlement Amount and calculation of the Settlement Checks; and a proposed Preliminary Approval Order.

DocuSign Envelope ID: 2706083A-7EAF-418A-9987-80F588DE9D31

(C)    The proposed Preliminary Approval Order will include the findings required by Federal Rule of Civil Procedure 23(a) and 23(b)(3).

(D)    In the Preliminary Approval Motion, Class Counsel will inform the Court of the intended process to obtain a "Final Approval Order" and a "Judgment of Dismissal with Prejudice" that will, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Release, as described herein; (3) dismiss the Litigation with prejudice; (4) award Class Counsel fees and costs; and (5) award Service Awards to Named Plaintiffs as more fully set forth herein. Defendants will not oppose the Preliminary Approval Motion.

(E)    If the Court denies the Preliminary Approval Motion, unless the Parties jointly agree to seek reconsideration of the ruling or to seek Court approval of a renegotiated settlement, the Litigation will resume as if no settlement had been attempted. Defendants retain the right to contest whether the Litigation should be maintained as a class or collective action and to contest the merits of the claims being asserted in the Litigation.

(F)    The Parties will work together, diligently and in good faith, to obtain expeditiously a Preliminary Approval Order, Final Approval Order, and Final Judgment and Dismissal with Prejudice.

## 2.4    Notice to Class Members

(A)    Within ten (10) business days of the Court's issuance of a Preliminary Approval Order, Defendants will provide the Settlement Claims Administrator, in electronic form, for all Class Members the following information: name, Social Security Number, last known address, dates of employment, job titles, with dates, and workweeks within the applicable liability periods set forth in Sections 1.14 and 1.26 above as that information exists on file with Defendants ("Class List").

(B)    The names, Social Security Numbers, and contact information of the Putative Class Members are confidential. Price Chopper will not provide that information to Class Counsel, but instead will provide that information to the Settlement Claims Administrator. The Settlement Claims Administrator must treat such information confidentially and cannot share that information with Class Counsel or anyone else. Notwithstanding this, the Settlement Claims Administrator shall provide Class Counsel with such contact information for all Class Members who participate in the settlement and for Class Members who call the Settlement Claims Administrator or Class Counsel with a question or a dispute. Before mailing Notice to the Class Members, the Settlement Claims Administrator will perform a skip trace on all Class Member addresses to obtain the most current address for each Class Member. Within twenty (20) days of the Court's issuance of a Preliminary Approval Order, the Settlement Claims Administrator will send to all Putative Class Members, via First-Class United States Mail, postage

prepaid, the Court-approved Notice of Settlement of Class and Collective Action Lawsuit and Fairness Hearing and Claim Form. The Notice shall inform the Putative Class Members of their approximate settlement allocations. The Settlement Claims Administrator shall provide a stamped return envelope with each Putative Class Member's Notice. Putative Class Members shall have forty-five (45) days from the date of mailing of the Notice ("Claims Period"), or 30 days from any re-mailing of the Notice for which the Putative Class Member's correct address is identified ("Re-mailing Claims Period") to submit their completed Claim Form, which must be either postmarked by, or e-mailed or facsimiled on or before the 45th day of the Claims Period or 30th day of the Re-mailing Claims Period. Putative Class Members who fail to return a complete and timely Claim Form within the Claims Period will be ineligible to receive any settlement payment pursuant to this Agreement. A Claim Form is not complete if the Putative Class Member fails to sign the Claim Form as required. Within five days after receipt of an incomplete form, the Settlement Claims Administrator will notify the Putative Class Member in writing that he or she must correct the Claim Form ("Cure Notice"). The Cure Notice will enclose a pre-paid reply envelope. Putative Class Members must cure the deficiency by the later of (1) 60 days from the initial mailing; or (2) 15 days from the date of the Cure Notice.

(C)     Within twenty (20) days of the Court's issuance of a Preliminary Approval Order, the Settlement Claims Administrator will mail to all Opt-In Plaintiffs the Court-approved Notice of Settlement of Collective Action Lawsuit and Fairness Hearing. Opt-In Plaintiffs will not be required to submit any Claim Form, but may opt out of the settlement, per paragraph 2.5.

(D)     Within twenty (20) days of the Settlement Claims Administrator's mailing of the Notices and Claim Forms, the Settlement Claims Administrator will send to all Class Members, via First-Class United States Mail, postage prepaid, the Court-approved Reminder Notices.

(E)     The Settlement Claims Administrator will take all reasonable steps to obtain the correct address of any Class Members for whom a Notice is returned by the Post Office as undeliverable and shall attempt re-mailings as described in this Agreement. The Settlement Claims Administrator will notify Class Counsel and Defendants' Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement

(F)     The Notices will also explain that any Class Member who desires to opt out of the settlement may submit a written statement with the Settlement Claims Administrator by the expiration of the Claims Period. To be effective, the request to be excluded from the settlement must be submitted to the claims administrator by U.S. Mail, fax, or email and it must be postmarked no later than 45 days from the mailing of the Notice to the Class Member, or for any Class Member whose Notice was returned undeliverable within 30 days of the date of the mailing for

which the Class Member's correct address is identified, but in any case no later than seven (7) days before the Final Fairness Hearing.

**2.5    Class Member Opt-outs.**

(A)    Class Members who choose to opt-out of the Settlement as set forth in this Agreement must submit a written, signed statement to the Settlement Claims Administrator that includes his or her name, address, and telephone number and a statement to this effect: "I opt out of the Price Chopper Settlement" ("Opt-out Statement"). To be effective, an Opt-out Statement must be postmarked, e-mailed, or faxed within forty-five (45) days from the mailing of the Notice to the Class Member, or for any Class Member whose Notice was returned undeliverable within thirty (30) days of the date of the mailing for which the Class Member's correct address is identified, but in any case no later than seven (7) days before the Final Fairness Hearing ("Opt-Out Period"). For any deadline under this Agreement that is based on a postmark, in the event that there is no postmark date of the document being mailed by the Class Member, it shall be presumed that the document was mailed seven (7) days prior to the Settlement Claims Administrator's receipt of the document, excluding any Sunday or other day for which no postal service was provided. It is the responsibility of the individual seeking to opt-out to retain a copy of the Opt-out Statement and proof of timely mailing hereunder.

(B)    The Settlement Claims Administrator will stamp the postmark date on the original of each Opt-out Statement that it receives and shall serve copies of each Opt-out Statement on Class Counsel and Defendant's Counsel not later than three (3) days after receipt thereof. Class Counsel will file stamped copies of any Opt-out Statements with their Motion for Judgment and Final Approval. The Settlement Claims Administrator will, within twenty-four (24) hours of the end of the Opt-out Period, send a final list of all Opt-out Statements to Class Counsel and Defendant' Counsel by email. The Settlement Claims Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(C)    Any Class Member who does not timely and properly submit an Opt-out Statement shall be bound by this Settlement and deemed to have released the Released Claims regardless of whether he or she negotiates a Settlement Check. Any Class Member who negotiates a Settlement Check shall be bound by the Settlement and deemed to have released the Released Claims regardless of whether such individual also submitted an Opt-out Statement and regardless of whether any of the language on the check endorsement is changed, crossed out, or deleted.

**2.6    Objections to Settlement.**

(A)     Class Members who do not opt-out and who wish to object to the proposed Settlement must do so in writing.  To be valid, a written objection must be mailed to the Settlement Claims Administrator via first-class mail, postage prepaid, and be received by the Settlement Claims Administrator by a date certain forty-five (45) days from the mailing of the Notice to the Class Member, but in any case no later than seven (7) days before the Final Fairness Hearing.  The written objection must include the words, "I object to the Price Chopper settlement" as well as all reasons for the objection.  Any reasons not included in the written objection will not be considered.  The written objection must also include the name, address, and telephone number for the Class Member making the objection.  The Settlement Claims Administrator will stamp the date received on the original and send copies of each objection to Class Counsel and Defendant' Counsel by email and overnight delivery no later than three (3) days after receipt thereof.  Class Counsel will file the date-stamped originals of any and all objections with their Motion for Judgment and Final Approval.  It is the responsibility of any Class Member who files an objection (an "Objector") to retain a copy of the objection and proof of timely mailing hereunder.

(B)     A valid Objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector.  An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections by including the words, "I intend to appear at the Fairness Hearing" in his or her written objection.  An Objector may withdraw his or her objections at any time.

(C)     No Class Member may appear at the Fairness Hearing unless he or she has submitted a timely objection that complies with the procedures provided in this Section and the previous Section.  Class Members who fail to submit timely and valid objections will be deemed to have waived objections to the Settlement and they will be foreclosed from making objections.  A Class Member who has submitted an Opt-out Statement may not object to the Agreement.

(D)     The Parties may file with the Court written responses to any objections no later than three (3) calendar days before the Fairness Hearing.

2.7     Motion for Judgment and Final Approval.  Not later than fifteen (15) days before the Fairness Hearing, Plaintiffs will submit a Motion for Judgment and Final Approval.  The Fairness Hearing shall be held at the Court's convenience, but in no event earlier than 90 days from the date of the Preliminary Approval Order is signed, in accordance with the Class Action Fairness Act.

2.8     Entry of Judgment.  At the Fairness Hearing, the Parties will request that the Court, among other things, (a) certify the Massachusetts, New York, Connecticut, and Pennsylvania Classes for purposes of settlement, (b) enter Judgment in accordance with this Agreement, (c) approve the settlement and Agreement as final, fair, reasonable, adequate, and binding on all Putative Class Members who have returned their signed

consent forms by the Consent Deadline, (d) approve the FLSA settlement, and (e) dismiss the Litigation with prejudice.

2.9    Effect of Failure to Grant Final Approval.  In the event the Court fails to enter Judgment in accordance with this Agreement or such Judgment does not become Final, the Parties shall resume the Litigation unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying entry of Judgment, or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.  In the event any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved:

(A)    The Litigation will proceed as if no settlement had been attempted.  In that event, the class certified for purposes of settlement shall be decertified, and Defendants may contest whether this Litigation should be maintained as a class or collective action and contest the merits of the claims being asserted by Plaintiffs in this action.  In such a case, the Parties will negotiate and submit for Court approval a revised case management schedule.

2.10   **Releases and Claim Forms.**

(A)    A copy of the Claim Form is attached hereto as Exhibit A.

(B)    A Putative Class Member who timely returns a Claim Form will be issued a Settlement Check by the Settlement Claims Administrator from the QSF in accordance with the Final Approval Order.  No Settlement Check will be issued to any Putative Class Member who fails to properly complete and timely return a valid Claim Form.

(C)    The Settlement Claims Administrator will provide the Parties with the final list of Participating Class Members who are entitled to receive payments under the settlement within 20 days after the Effective Date.  The list will include for each claimant their (i) full name, (ii) best known address, (iii) social security number, and (iv) pro rata share of the a settlement amount based upon the formula in Section 3.4.

(D)    The Settlement Checks will be mailed to Participating Class Members by the Settlement Claims Administrator ten (10) business days after Price Chopper shall have deposited the Settlement Amount into the QSF, as set forth in Sections 3.1(A) and 3.1(B).  For any claimant whose Settlement Check is returned as undelivered, the Settlement Claims Administrator will take reasonable steps to locate the claimant and re-mail the check.

(E)    Language will be inserted on the back of each check issued to a Participating Class Member stating that:  "By accepting this payment, I waive any right to bring suit for back wages under the Fair Labor Standards Act and all other applicable state and local laws for overtime wages or any other wage and hour claims through December 1, 2016.  I agree that by accepting this payment, I have settled my claims for any unpaid wages, liquidated damages, interest, and

DocuSign Envelope ID: 2706092A-7EAF-410A-9957-965B08DE9B21

associated fees and penalties through the date of my signature to endorse this check."

## 3.    SETTLEMENT TERMS AND ADMINISTRATION

### 3.1    Settlement Amount.

(A)    Defendants agree to pay up to a maximum gross amount of Six Million Five Hundred Thousand and No/100ths Dollars ($6,500,000.00), which shall fully resolve and satisfy any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Class Members, any Court-approved Service Awards to Named Plaintiffs as more fully set forth herein, and the Settlement Claims Administrator's fees and costs. Defendants will not be required to pay more than the gross total of Six Million Five Hundred Thousand and No/100ths Dollars ($6,500,000.00) under the terms of this Agreement, except as provided under Section 3.5(C). Defendants will deposit the total amount of any payments due to the Named Plaintiffs and Opt-In Plaintiffs from the Opt-In Fund into the QSF within fifteen (15) business days after the Effective Date.

(B)    Defendants will deposit the Employer Payroll Taxes and total amount of payments for Participating Class Members (other than the Named Plaintiffs and Opt-In Plaintiffs) who properly and timely file Claim Forms into the QSF within thirty (30) business days after receiving all information from the Settlement Claims Administrator necessary to calculate and process such payments and the Effective Date.

(C)    The Settlement Claims Administrator will issue checks to Participating Class Members within ten (10) business days after receiving funding from Price Chopper.

(D)    Disputed claims will be resolved by the Settlement Claims Administrator, and Price Chopper's records shall be presumed accurate.

(E)    Participating Class Members will have 90 days from the date of mailing to cash their Settlement Checks (the "Acceptance Period"). Participating Class Members will be informed of the Acceptance Period in the Notices and on the Settlement Checks.

(F)    Any unclaimed funds and unnegotiated Settlement Checks to Participating Class Members that are not cashed within 90 days after the date of mailing shall be void and a stop payment shall be issued on the check. Any unclaimed funds from unnegotiated checks shall revert to Price Chopper within 30 days.

### 3.2    Settlement Amounts Payable as Attorneys' Fees and Costs.

(A)    At the Fairness Hearing and Motion for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees of no more than one third of the Gross Settlement Amount, and, in addition, for reimbursement of their litigation

costs and expenses up to $75,000.00 to be paid from the QSF. Defendants will not oppose this application.

(B)    The substance of Class Counsel's application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The settlement is not conditioned upon the Court's approval of Class Counsel's petition for fees and costs and the outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval. Defendants will deposit into the QSF Class Counsel's attorneys' fees and costs within fifteen (15) business days after the Effective Date. The Settlement Claims Administrator will transmit payment to Class Counsel within ten (10) business days after receiving funding from Price Chopper.

**3.3    Service Awards to Named Plaintiffs.**

(A)    In return for services rendered to the Class Members, at the Fairness Hearing, the Named Plaintiffs will each apply to the Court to receive Ten Thousand and No/100ths Dollars ($10,000.00) as a Service Award from the QSF. The total amount of any Service Awards will be deducted from the Gross Settlement Amount. Defendants will not oppose such applications. Defendants will deposit into the QSF the Service Awards within fifteen (15) business days after the Effective Date. The Settlement Claims Administrator will transmit Service Awards to the Named Plaintiffs within ten (10) business days after receiving funding from Price Chopper. All Named Plaintiffs receiving a Service Award shall be required to execute the general release of claims described in paragraph 4.1(C) of this Agreement.

(B)    The application for Service Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for Service Awards will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval or for Final Judgment and Dismissal.

**3.4    Opt-In Fund, Net Settlement Fund, and Allocation to Class Members.**

(A)    The claims of the Named Plaintiffs and Opt-In Plaintiffs shall be paid out of a common fund of $1,500,000 (One Million Five Hundred Thousand Dollars) (the "Opt-In Fund"), with each such individual receiving a portion of the Opt-In Fund determined by weeks worked in the Relevant Period.

To calculate each Opt-In Plaintiff's proportionate share:

(a)    Add all weeks for Opt-In Plaintiffs together to obtain the "Opt-In Total Denominator;"

(b)     Divide the number of weeks for each Opt-In Plaintiff by the Opt-In Total Denominator to obtain each Opt-In Plaintiff's "Portion of the Opt-In Fund;" and

(c)     Multiply each Opt-In Plaintiff's Portion of the Opt-In Fund by the Opt-In Fund to determine each Opt-In Plaintiff's "Settlement Award."

(B)     The allocation to the rest of the Putative Class Members for their potential settlement amount will be made from the Net Settlement Fund.

(C)     A Putative Class Member's estimated proportionate share of the Net Settlement Fund will be determined by the Settlement Claims Administrator pursuant to the following formula:

(1)     Each Putative Class Member who Defendants employed in Massachusetts shall be assigned 1.5 points for each week worked as a DM in the Commonwealth of Massachusetts during the period from July 30, 2011 through December 1, 2016.

(2)     Each Putative Class Member who Defendants employed in New York shall be assigned 1 point for each week worked as a DM in New York from July 30, 2008 through December 1, 2016.

(3)     Each Putative Class Member who Defendants employed in Pennsylvania shall be assigned 1.5 points for each week worked as a DM in Pennsylvania from July 30, 2011 through December 1, 2016.

(4)     Each Putative Class Member who Defendants employed in Connecticut shall be assigned 1 point for each week worked as a DM in Connecticut from July 30, 2012 through December 1, 2016.

To calculate each Putative Class Member's proportionate share:

(a)     Add all points for Putative Class Members together to obtain the "Total Denominator;"

(b)     Divide the number of points for each Putative Class Member by the Total Denominator to obtain each Putative Class Member's "Portion of the Net Settlement Fund;" and

(c)     Multiply each Putative Class Member's Portion of the Net Settlement Fund by the Net Settlement Fund to determine each Putative Class Member's "Settlement Award."

(D)     The Claims Administrator will provide its calculations to Class Counsel and to Price Chopper's Counsel within three (3) business days after completing the calculations referenced in this Section.

- 14-

3.5 **Tax Characterization**

(A)    For tax purposes, 50% of payments to Class Members pursuant to Section 3.4 shall be treated as back wages and 50% of such payments shall be treated as interest and/or liquidated damages.

(B)    Payments treated as back wages pursuant to Section 3.5(A) shall be made net of all applicable employment taxes ordinarily borne by employees, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and Social Security Number on an IRS Form W-2. Payments treated as interest and/or liquidated damages pursuant to Section 3.5(A) shall be made without tax withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and Social Security Number on an IRS Form 1099. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without tax withholding and reported to the IRS and the payee under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form W-9. The Settlement Administrator will determine the proper tax treatment of any Service Payment pursuant to Section 3.3.

(C)    Employer Payroll Taxes shall not come out of the Gross Settlement Amount but shall be paid by Price Chopper in addition to any claimed amount of the Gross Settlement Amount.

(D)    Plaintiffs acknowledge and agree that each will be solely responsible for all taxes, interest and penalties due with respect to any payment received pursuant to this Agreement (other than taxes specified in Section 3.5(C)) and will indemnify, defend and hold Defendants and the Settlement Claims Administrator harmless from and against any and all taxes or penalties imposed on Defendants or the Settlement Claims Administrator for taxes due under the settlement, unless such liability is directly caused by Price Chopper.

(E)    The employee portion of all applicable income and payroll taxes will be the sole responsibility of the individual Class Member receiving a Settlement Check or Service Award.

4.    **RELEASE**

4.1    **Release of Claims.**

By operation of the entry of the Judgment and Final Approval, and except as to such rights or claims as may be created by this Agreement,

(A)    Plaintiffs and each Putative Class Member who received Notice pursuant to this Agreement (except persons who timely and properly opt out of the settlement under Section 2.5 above) forever and fully releases Defendants from all wage and hour claims asserted under state law by and on behalf of the State Sub-Class (the "Released Rule 23 Claims"). The Released Rule 23 Claims include all

- 15-

claims under the state laws of Massachusetts, New York, Connecticut, and Pennsylvania for unpaid wages, and any related wage and hour claims, penalties, liquidated damages and interest on such claims, and attorneys' fees and costs related to such claims relating to Putative Class Members' employment with Defendants as Department Managers in Massachusetts from July 30, 2011 through December 1, 2016; in New York from July 30, 2008, through December 1, 2016; in Pennsylvania from July 30, 2011 through December 1, 2016; and in Connecticut from July 30, 2012 through December 1, 2016.

(B)     In addition to the Released Rule 23 Claims, by signing and cashing the Settlement Checks, all Participating Class Members forever and fully release Defendants from all FLSA claims asserted in the Litigation ("Released FLSA Claims"). The Released FLSA Claims include all FLSA claims for unpaid overtime wages, any related wage and hour claims, liquidated damages, interest, penalties, and attorneys' fees and costs related to such claims relating to Participating Class Members' employment with Defendants as Department Managers through December 1, 2016.

(C)     In addition to the Released Rule 23 Claims and Released FLSA Claims, by signing and cashing their Settlement Checks, all Named Plaintiffs receiving a Service Award additionally waive, release and discharge Defendants from all claims, demands, causes of action, and liabilities, whether known or unknown, relating to their employment with Defendants, including but not limited to claims under the Americans With Disabilities Act, National Labor Relations Act, Fair Labor Standards Act (including but not limited to claims for overtime compensation), Equal Pay Act, Employee Retirement Income Security Act of 1974, Worker Adjustment and Retraining Notification Act, Title VII of the Civil Rights Act of 1964, Civil Rights Acts of 1866, 1871 and 1991, Age Discrimination in Employment Act, Family and Medical Leave Act, and any other federal, state or local statute, regulation, and order, and in common law, through the date the Named Plaintiffs sign this Agreement. Named Plaintiffs do not release any claim that cannot be released as a matter of law or rights under this Agreement.

(D)     Nothing in this Agreement will be considered a waiver of any claims by Plaintiffs or Class Members that may arise after the Effective Date.

**4.2     Non-Admission of Liability.** Defendants have agreed to the terms of settlement herein without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will (i) provide substantial benefits to Defendants' shareholders, (ii) avoid the further expense and disruption of Defendants' business due to the pendency and expense of litigation, and (iii) put the claims in the Litigation finally to rest. Nothing in this Agreement shall be deemed or used as an admission of liability by Defendants, or as an admission that a class should be certified for any purpose other than settlement purposes.

## 5.     INTERPRETATION AND ENFORCEMENT

5.1     Cooperation Between the Parties; Further Acts.  The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

5.2     No Assignment.  Class Counsel and Named Plaintiffs, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

5.3     Entire Agreement.  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

5.4     Binding Effect.  This Agreement shall be binding upon the Parties and, with respect to the Named Plaintiffs, the Opt-in Plaintiffs, and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

5.5     Arms' Length Transaction; Materiality of Terms.  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

5.6     Captions.  The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.7     Construction.  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

5.8     Blue Penciling/Severability.  If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

5.9     Governing Law.  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the Commonwealth of Massachusetts, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.10    Continuing Jurisdiction.  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

5.11    Waivers, etc. to Be in Writing.  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.12    Publicity.  The Parties and their counsel will keep terms and conditions of the settlement confidential (except to the extent necessary to advise clients and Class Members), and will not contact, or comment to, the media about the settlement, prior to submission to the court for preliminary approval.  After submission to the Court of the Motion for Preliminary Approval, neither Named Plaintiffs nor Class Counsel, or Defendants or Defendants' Counsel, may make any public comment, communications to media, or any form of advertising or public announcement (including social media) regarding the case, except to limit their comments to "the parties were able to reach a mutually acceptable resolution of this matter and Price Chopper denies any wrongdoing."  Notwithstanding the foregoing, the Parties shall have the right to disclose this Agreement as may be required under federal or state tax and/or securities laws or under generally accepted accounting principles, and may disclose in legal proceedings a summary of the terms of this Agreement.

5.13    CAFA Notice.  Defendants shall timely provide notice as required by the Class Action Fairness Act ("CAFA").

5.14    When Agreement Becomes Effective; Counterparts.  This Agreement shall become effective upon its execution.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.15    Signatures of Named Plaintiffs.  This Agreement is valid and binding if signed by Defendants' authorized representatives and at least one Named Plaintiff and any Named Plaintiff's failure to sign the Agreement does not nullify the Agreement.

5.16    Facsimile and Email Signatures.  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be

deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**WE AGREE TO THESE TERMS,**

DATED: July **31**, 2017          **THE GOLUB CORPORATION,**

By: *Christine C. Daniels*

Its: Sr. VP General Counsel & Secretary

DATED: July **31**, 2017          **THE PRICE CHOPPER, INC.,**

By: *Christine C. Daniels*

Its: Secretary

DATED: July **31**, 2017          **PRICE CHOPPER OPERATING CO. OF MASSACHUSETTS, INC.,**

By: *Christine C. Daniels*

Its: Assistant Secretary

DATED: July ____, 2017          **SHELLY J. DAVINE,**

_____

DATED: July ____, 2017          **JAMES E. WILLIAMS,**

_____

**WE AGREE TO THESE TERMS,**

DATED:  July _____, 2017          **THE GOLUB CORPORATION,**


By: _____


Its: _____


DATED:  July _____, 2017          **THE PRICE CHOPPER, INC.,**


By: _____


Its: _____


DATED:  July _____, 2017          **PRICE CHOPPER OPERATING CO. OF MASSACHUSETTS, INC.,**


By: _____


Its: _____


DATED:  July 7/31/2017 _____, 2017          **SHELLY J. DAVINE,**

_____

DocuSigned by:

*Shelly J Davine*

DA53C44E2111446...

DATED:  July _____, 2017          **JAMES E. WILLIAMS,**

_____

DATED: July 29/___, 2017          **JACOB E. OGDEN,**

_____

DATED: July ____, 2017          **BETH A. FARRAR,**

_____

DATED: July 7/28/2017, 2017          **PHILIP CARDINALE,**

_____

# Exhibit A

**United States District Court for the District of Massachusetts**

*Davine et al v. The Golub Corporation et al., 3:14-cv-30136-MGM*

## CLAIM FORM

**YOUR ESTIMATED SETTLEMENT SHARE:**  If you properly submit this Claim Form by the deadline, and the Court approves the settlement, you should receive approximately $_____, minus applicable taxes.

**DEADLINE:**  To receive your settlement payment, you must complete, sign, and return this Claim Form in the enclosed pre-paid envelope.  Your Claim Form must be postmarked or received on or before **[INSERT DATE 45 days from date of mailing]**.  If you lose the envelope, you should send the Claim Form to:

CPT Group
Attn:  Kelsey Skey, Case Manager I
16630 Aston St., Irvine, California 92606
Main Telephone: (800) 542-0900
T: (949) 428-1064 F: (949) 428-1065
kelsey@cptgroup.com  www.cptgroup.com

**CHANGE OF ADDRESS:**  If you change your address, please inform the Settlement Administrator of your new address to ensure processing of your claim.  It is your responsibility to keep a current address on file with the Settlement Administrator.

**RELEASE:**  By signing, dating, and returning this Claim Form, you agree to be bound by the Settlement Agreement negotiated by Class Counsel,  you consent to become a party plaintiff to this action under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and agree to the following release:  I fully, finally and forever release Defendants from all wage and hour claims for unpaid wages (including overtime wages) asserted under the FLSA and/or any state or local laws, including the laws of Massachusetts, New York, Connecticut, and Pennsylvania, , and any related wage and hour claims, any liquidated damages, penalties, or interest on such claims, and any attorneys' fees and costs related to such claims relating to my employment with Defendants as a Department Manager from the beginning of time through December 1, 2016.

I declare under penalty of perjury that the above information is true and correct.

_____        _____
Date                                                                          Signature

_____        _____
Last Four Digits of Social Security Number        Name (Printed)

**YOU MUST SUBMIT THIS CLAIM FORM BY NO LATER THAN [INSERT DATE 45 days from date of mailing] TO BE ELIGIBLE FOR PAYMENT.**
**BE SURE YOU HAVE SIGNED AND DATED THIS FORM.**