## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **SHELLY J. DAVINE, JAMES E. WILLIAMS, JACOB E. OGDEN, BETH A. FARRAR, and PHILIP CARDINALE on behalf of themselves and all others similarly situated,**<br><br>                    **Plaintiffs,**<br><br>      **v.**<br><br>**THE GOLUB CORPORATION, THE PRICE CHOPPER, INC., and PRICE CHOPPER OPERATING CO. OF MASSACHUSETTS, INC.,**<br><br>                    **Defendants.** | **Civil Action No.: 3:14-cv-30136-MGM** |

## MEMORANDUM OF LAW IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF SETTLEMENT, SERVICE AWARDS, AND ATTORNEYS' FEES AND COSTS

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................ 1

I.    Factual Allegations .................................................................................. 1

II.   Overview of Investigation, Litigation, and Settlement Negotiations ................. 2

SUMMARY OF THE SETTLEMENT TERMS ....................................................... 5

    A.   Settlement Payment ........................................................................... 5

    B.   Allocation Formula ............................................................................ 5

    C.   Settlement Classes ............................................................................. 5

    D.   Releases ........................................................................................... 6

    E.   Attorneys' Fees, Costs, and Service Awards ........................................ 6

ARGUMENT ................................................................................................... 7

I.    The Proposed Settlement is Fair, Reasonable, and Adequate, and Should be Approved ... 7

    A.   The Settlement Is Fair ....................................................................... 8

        1.   Litigation Through Trial Would Be Complex, Costly, and Long .............. 8

        2.   The Reaction of the Class Supports Final Approval ................................... 9

        3.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly .................................................. 11

        4.   Plaintiffs Would Face Risks if the Case Proceeded; the Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery .......... 12

        5.   Maintaining the Class Through Trial Would Not Be Simple ................. 13

        6.   Defendants' Ability to Withstand a Greater Judgment Does Not Detract from the Fairness of the Settlement ............................. 13

    B.   The Plan of Allocation Is Fair, Reasonable, and Adequate ................... 14

    C.   Final Certification of the Class Is Appropriate ................................... 14

II.   The Service Awards to Plaintiffs Should Be Approved as Fair and Reasonable ............ 15

III.  The Requested Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable ................................................................ 18

    A.   The Requested Fee Is Reasonable ..................................................... 18

    B.   Class Counsel Are Entitled to Recover Their Out-of-Pocket Expenses, Which Are Reasonable and Have Inured to the Benefit of the Class ............... 21

CONCLUSION ............................................................................................... 21

## **TABLE OF AUTHORITIES**

**Cases**                                                                 **Page(s)**

*In re Agent Orange Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984) ........................................................................9

*Anderson v. HomeDelivery*,
    No. 11 Civ. 10313 (D. Mass. Dec. 17, 2014) .......................................................17

*In re Austrian & Ger. Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)....................................................................8

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013) ........................................................................20

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)..........................................................................................18

*Bozak v. FedEx Ground Package Sys., Inc.*,
    No. 11 Civ. 00738, 2014 WL 3778211 (D. Conn. July 31, 2014)....................15, 16

*Bussie v. Allamerica Fin. Corp.*,
    No. 97 Civ. 40204, 1999 WL 342042 (D. Mass. May 19, 1999) ..........................15

*Capsolas v. Pasta Res., Inc.*,
    No. 10 Civ. 5595, 2012 WL 4760910 (S.D.N.Y. Oct. 5, 2012) ...........................17

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.*,
    No. MDL 09-2067, 2014 WL 4446464 (D. Mass. Sept. 8, 2014) .........................15

*Cerutti v. Frito Lay, Inc.*,
    777 F. Supp. 2d 920 (W.D. Pa. 2011)..................................................................5

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)..........................................................................8, 14

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ...........................................................................12

*Crenshaw v. Texas Roadhouse, Inc.*,
    No. 11 Civ. 10549 (D. Mass. Sept. 5, 2012)........................................................19

*Curtis v. Scholarship Storage Inc.*,
    No. 14 Civ. 303, 2016 WL 3072247 (D. Me. May 31, 2016) .................................7

*DeLeon v. Wells Fargo Bank, N.A.*,
    No. 12 Civ. 4494, 2015 WL 2255394 (S.D.N.Y. May 7, 2015)............................16

*Dent v. ITC Serv. Group, Inc.*,
    No. 12 Civ. 00009, 2013 WL 5437331 (D. Nev. Sept. 27, 2013) ...........................................17

*Ebbert v. Nassau County*,
    No. 05 Civ. 5445, 2011 WL 6826121 (E.D.N.Y. Dec. 22, 2011) ...........................................17

*In re Fid./Micron Secs. Litig.*,
    167 F.3d 735 (1st Cir. 1999) ................................................................................................21

*Foster v. Kraft Foods Glob., Inc.*,
    285 F.R.D. 343 (W.D. Pa. 2012) ...........................................................................................5

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) ................................................................................13, 17

*Guippone v. BH S & B Holdings, LLC*,
    No. 09 Civ. 01029, 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011) ........................................17

*Hadel v. Gaucho, LLC*,
    193 F. Supp. 3d 243 (S.D.N.Y. 2016) ...................................................................................17

*Hall v. ProSource Techs., LLC*,
    No. 14 Civ. 2505, 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) .........................................20

*Hill v. State St. Corp.*,
    No. 09 Civ. 12146, 2015 WL 127728 (D. Mass. Jan. 8, 2015) ........................................9, 14

*Hochstadt v. Bos. Sci. Corp.*,
    708 F. Supp. 2d 95 ...............................................................................................................11

*Khait v. Whirlpool Corp.*,
    No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) .........................................17

*Latorraca v. Centennial Techs. Inc.*,
    834 F. Supp. 2d 25 (D. Mass. 2011) .....................................................................................21

*Lipsitt v. Plaud*,
    994 N.E.2d 777 (2013) ...........................................................................................................5

*In re Lupron Mktg. & Sales Practices Litig.*,
    228 F.R.D. 75 (D. Mass. 2005) .........................................................................7, 8, 12, 13

*Malanka v. de Castro*,
    Nos. 85 Civ. 2154, 88 Civ. 0305, 1990 WL 253610 (D. Mass. Nov. 20, 1990) ...................20

*Matamoros v. Starbucks*,
    No. 08 Civ. 10772 (D. Mass. Aug. 16, 2013) .......................................................................19

*Mathes v. Roberts*,
    85 F.R.D. 710 (S.D.N.Y. 1980) ............................................................................9

*New Eng. Carpenters Health Benefits Fund v. First DataBank, Inc.*,
    602 F. Supp. 2d 277 (D. Mass. 2009) ..................................................................8

*In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*,
    982 F.2d 603 (1st Cir. 1992) ...............................................................................21

*In re P. R. Cabotage Antitrust Litig.*,
    815 F. Supp. 2d 448 (D.P.R. 2011) .....................................................................19

*In re P.R. Cabotage Antitrust Litig.*,
    269 F.R.D. 125 (D.P.R. 2010) .............................................................................11

*Parker v. Jekyll & Hyde Ent. Holdings, LLC*,
    No. 08 Civ 7670, 2010 WL 532960 ....................................................................17

*In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*,
    No. 10 Civ. 30163, 2014 WL 6968424 (D. Mass. Dec. 9, 2014) ...........................17

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005)..............................................................7, 8, 19, 20

*Reyes v. Altamarea Grp., LLC*,
    No. 10 Civ. 6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) .........................17

*Scovil v. FedEx Ground Package Sys., Inc.*,
    No. 10 Civ. 515, 2014 WL 1057079 (D. Me. Mar. 14, 2014) ...................... *passim*

*Sewell v. Bovis Lend Lease, Inc.*,
    No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)...........................17

*Singleton v. AT&T Mobility Servs., LLC*,
    146 F. Supp. 3d 258 (S.D.N.Y. 2015)....................................................................7

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*,
    56 F.3d 295 (1st Cir. 1995)..................................................................................18

*In re TJX Cos. Retail Sec. Breach Litig.*,
    584 F. Supp. 2d 395 (D. Mass. 2008) .................................................................19

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007).....................................................................20

*Varacallo v. Massachusetts Mut. Life Ins. Co.*,
    226 F.R.D. 207 (D.N.J. 2005)..............................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)................................................................................................13

**Statutes**

28 U.S.C. § 1291................................................................................................................13

**Other Authorities**

Fed. R. Civ. P. 23.........................................................................................................7, 13

## INTRODUCTION

Plaintiffs, Shelly J. Davine, James E. Williams, Jacob E. Ogden, Beth A. Farrar and

Philip Cardinale, and Defendants, The Golub Corporation, The Price Chopper, Inc., and Price

Chopper Operating Co. of Massachusetts, Inc., have agreed, subject to Court approval, to resolve

this unpaid overtime lawsuit on a class and collective basis for significant monetary relief.  The

settlement, which followed a thorough investigation, litigation, and months of settlement

negotiations facilitated by an experienced mediator, satisfies the criteria for final approval under

federal law.

Plaintiffs therefore respectfully request that the Court issue an order: (1) approving the

$6,500,000.00 settlement set forth in the Joint Stipulation of Settlement and Release (the

"Agreement"),[1] attached as Exhibit A to the accompanying Declaration of Justin M. Swartz in

Support of  Motion for Final Approval of Settlement, Service Awards, and Attorneys' Fees and

Costs ("Swartz Decl."); (2) approving Service Awards of $10,000 to each Plaintiff; (3)

approving one-third of the settlement fund for attorneys' fees, plus reimbursement of $75,000 in

costs and expenses; (4) approving the Claims Administrator's fees of $28,032; and (5) entering

judgment in accordance with the Settlement Agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Factual Allegations

Plaintiffs worked as Department Managers at Price Chopper grocery stores in

Massachusetts, New York, Connecticut, Pennsylvania, Vermont, and New Hampshire.  They

allege that Defendants misclassified them as exempt from overtime protections and improperly

denied them overtime compensation for hours that they worked over forty in many workweeks.

---

[1] Unless otherwise indicated, all capitalized terms have the definitions set forth in the Agreement.

Plaintiff Shelly Davine filed this lawsuit in the U.S. District Court for the District of Massachusetts on July 30, 2014, bringing FLSA and Massachusetts Wage Act ("MWA") claims. ECF No. 1.  On August 6, 2014, Davine, along with James Williams, Jacob Ogden, Beth Farrar, and Philip Cardinale, filed a First Amended Complaint, adding claims on behalf of Department Managers who worked in New York, Pennsylvania, and Connecticut.  ECF No. 11.

On November 19, 2014, Plaintiffs filed a motion for FLSA conditional certification, which the Court granted.  ECF No. 74.  After notice issued, 317 collective members joined the lawsuit.  Swartz Decl. ¶ 21.

## II.    Overview of Investigation, Litigation, and Settlement Negotiations

The Parties engaged in extensive discovery prior to settling the lawsuit.  Defendants requested written discovery from the Plaintiffs and thirty opt-in Plaintiffs, to which Plaintiffs responded.  *Id.* ¶ 22.  Defendants also took the depositions of three Plaintiffs.  *Id.*  Defendants produced tens of thousands of pages of documents in response to Plaintiffs' document requests regarding its corporate policies; emails from its corporate custodians, managers, and Plaintiffs; pay records; and personnel records.  *Id.* ¶ 23.  The Parties engaged in motion practice with respect to certain documents that Defendants withheld on the basis of privilege and Electronically Stored Information ("ESI") that Plaintiffs requested for opt-in Plaintiffs and certain Defendants before their depositions.  *See* ECF Nos. 145-147, 149, 156-165, 185-187.

The Parties made two attempts to resolve the lawsuit through mediation.  After the first attempt failed on May 11, 2016, the Parties returned to mediation with Hunter Hughes, Esq., an experienced employment law mediator in December 2016.  Swartz Decl. ¶ 25.  After the second mediation, the Parties continued to negotiate with Mr. Hughes's assistance, until April 13, 2017, when they reached agreement on the material terms of a settlement and executed a term sheet. *Id.*  In advance of each mediation, the Parties exchanged information to assist them to evaluate

the damages.  Swartz Decl. ¶ 26.  Class Counsel hired an expert, Hemming Morse, LLP,[2] to assist them to evaluate the compensation and time data that Defendants had provided.  *Id.*

On July 31, 2017, Plaintiffs moved for preliminary approval of the Agreement. ECF Nos. 202-203.  On October 5, 2017, the Court granted primarily approval of the settlement, and directed the dissemination of notice to Class Members.  ECF No. 214.

The Parties selected CPT Group, a third-party Settlement Claims Administrator ("Claims Administrator"), to send the Notices and Claim Forms to Class Members and to distribute checks to Participating Class Members.  Ex. A (Agreement) ¶ 1.31.  On October 20, 2017, CPT received data files from Defendants containing Class Member names, last known mailing addresses, work states, total weeks worked, and social security numbers.  Declaration of Kelsey Skey of CPT Group ("Skey Decl.") ¶ 5, attached as Exhibit B to the Swartz Decl.  The final class list contained 1,144 Potential Class Members and 311 Opt-Ins.  *Id.*  CPT conducted a Skip Trace and a National Change of Address search to update the list of addresses as accurately as possible.  *Id.* ¶¶ 6-7.

On October 26, 2017, the Claims Administrator sent the Notices and Claim Forms to 1,455 Settlement Class Members.  *Id.* ¶ 9.  On November 15, 2017, CPT mailed a reminder postcard to all Class Members who had not yet returned a Claim Form.  *Id.* ¶ 12.

As of the Claim Form filing deadlines, 834 Claim Forms have been filed with the Claims Administrator.  *Id.* ¶ 16.  The total amount claimed by Class Members, excluding Opt-In Plaintiffs who were not required to submit a Claim Form to recover, is $2,138,448.67.  *Id.* ¶ 25.  One Class Member filed an objection to the Settlement.  *Id.* ¶ 22.  One Class Member opted out

---

[2] Founded in 1958, Hemming Morse, LLP is a national firm leading the accounting industry in Forensic and Financial Consulting Services, as well as Financial and Compliance Auditing of Employee Benefit Plans.  *See* Hemming Morse, LLP, http://www.hemming.com/firm/firm-overview/ (last visited Dec. 29, 2017).

of the Settlement, and another, Raymond Butler, attempted to do so but did not sign his exclusion form. *Id.* ¶¶ 18, 20. The Claims Administrator will contact Mr. Butler and request that he re-submit a signed exclusion form.

As of the date of this submission, the Claims Administrator has received three responses that it deems deficient and 13 responses that it deems untimely. *Id.* ¶¶ 19-20; Swartz Decl. ¶ 42. Regarding the deficient responses, one is Mr. Butler's exclusion form, addressed above, and two are Claim Forms. Skey Decl. ¶ 20. One of the deficient Claim Forms was submitted by Richard Condon, who was not on the class list provided by Defendants. Swartz Decl. ¶ 43. The parties are investigating whether Mr. Condon should have been included on the class list and Class Counsel will be prepared to update the Court regarding this matter at the Fairness Hearing. *Id*. The second deficient Claim Form was submitted by the daughter of a Class Member, Richard Perna. *Id*. ¶ 44. The parties have instructed the Claims Administrator to seek to obtain a corrected Claim Form from Mr. Perna or documentation showing that Mr. Perna's daughter can sign his Claim Form on his behalf. *Id*.

With respect to the untimely Claim Forms, Plaintiffs asked for Defendants' consent to allow them to participate. *Id*. ¶ 45. Defendants declined. *Id*. Plaintiffs respectfully request that the Court allow each to participate. Defendants have reserved the right to object to the inclusion of any untimely claims. The Claim Forms were postmarked shortly after the December 11, 2017 deadline. *See id*. ¶¶ 46-47 (postmarked between December 12 and 21, 2017). Six Class Members included an explanation with their Claim Form that, in Plaintiffs' view, justifies its untimeliness. *See id*. Class Counsel has asked the Claims Administrator to provide contact information for those who did not provide an explanation so that we can confer with them. *Id*. Class Counsel will be prepared to update the Court with any information they obtain from these

Class Members at the Fairness Hearing.

## SUMMARY OF THE SETTLEMENT TERMS

**A.     Settlement Payment**

Defendants have agreed to pay a maximum of $6,500,000 to cover: (1) all amounts to be paid to Participating Class Members; (2) the Settlement Claims Administrator's fees and costs; (3) Court-approved attorneys' fees and costs; (4) Court-approved Service Awards; and (5) the Opt-In Fund (defined below).  Ex. A (Agreement) ¶¶ 1.15, 1.18.

**B.     Allocation Formula**

Under the allocation formula, Participating Class Members will be paid according to the number of weeks they worked in the Relevant Period, whether they previously filed a consent to join the case, and the state in which they worked.  *See* Ex. A (Agreement) ¶ 3.4.

The claims of the Plaintiffs and Opt-In Plaintiffs will be paid out of a common fund of $1,500,000 (the "Opt-In Fund").  *Id*. ¶ 3.4(A).  The claims of Putative Class Members will be paid out of the Net Settlement Fund.  *Id.* ¶ 3.4(C).  Putative Class Members who worked in Massachusetts or Pennsylvania will be assigned an additional 1/2 point per workweek in recognition that Massachusetts authorizes treble damages,[3] and Pennsylvania does not recognize the fluctuating workweek defense.[4]

**C.     Settlement Classes**

Putative Class Members consist of all current and former Department Managers (other than the Plaintiffs and Opt-In Plaintiffs):

  1. In the Commonwealth of Massachusetts during the period from July 30, 2011 through December 1, 2016;

---

[3] *See Lipsitt v. Plaud*, 994 N.E.2d 777, 783 (2013).
[4] *See Foster v. Kraft Foods Glob., Inc.*, 285 F.R.D. 343, 348 (W.D. Pa. 2012); *Cerutti v. Frito Lay, Inc.*, 777 F. Supp. 2d 920, 945 (W.D. Pa. 2011).

2.  In the State of New York during the period from July 30, 2008 through December 1, 2016;

3.  In the State of Pennsylvania during the period from July 30, 2011 through December 1, 2016; and

4.  In the State of Connecticut during the period from July 30, 2012 through December 1, 2016.

*See* Ex. A (Agreement) ¶ 1.27.

Opt-In Plaintiffs include the Plaintiffs and current and former Department Managers who were classified as exempt employees and employed by Price Chopper during the period from July 30, 2011 through and including December 1, 2016, and who filed a consent to participate in the Litigation that has not been stricken.  *Id.* ¶ 1.23.

**D.    Releases**

Plaintiffs and each Putative Class Member who received Notice of the Settlement will release the Released Rule 23 Claims that accrued while they were employed in a Covered Position during the applicable Relevant Period through December 1, 2016.  Ex. A (Agreement) ¶ 4.1(A).  All Participating Class Members, by signing and cashing their Settlement Checks, will also release the Released FLSA claims that accrued while the Participating Class Member was employed in a Covered Position during the applicable Relevant Period through December 1, 2016.  *Id.* ¶ 4.1(B).

**E.    Attorneys' Fees, Costs, and Service Awards**

Class Counsel seeks one-third of the settlement for their attorneys' fees plus reimbursement of $75,000 of their costs and expenses.  Ex. A (Agreement) ¶ 3.2.  In exchange for signing a general release of all claims and in recognition of their services to the class, the Settlement Agreement provides for Service Awards of $10,000 each to the Plaintiffs.  *Id.* ¶ 3.3.

# ARGUMENT

## I.   The Proposed Settlement is Fair, Reasonable, and Adequate, and Should be Approved.

The Court has a duty to determine whether the proposed settlement is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Curtis v. Scholarship Storage Inc.*, No. 14 Civ. 303, 2016 WL 3072247, at *2 (D. Me. May 31, 2016) (internal quotation marks omitted); *see also Singleton v. AT&T Mobility Servs., LLC*, 146 F. Supp. 3d 258, 260 (S.D.N.Y. 2015) (same).  Federal Rule of Civil Procedure 23(e) also requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e).  "Although settlement is often a more favorable result than litigation, the court has a fiduciary duty to absent members of the class in light of the potential for conflicts of interest among class representatives and class counsel and the absent members." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 71 (D. Mass. 2005) (internal quotations omitted).

Courts approve wage and hour settlements when they are reached because of contested litigation to resolve *bona fide* disputes.  *See, e.g.*, *Curtis*, 2016 WL 3072247, at *3; *Singleton*, 146 F. Supp. 3d at 260; *Scovil v. FedEx Ground Package Sys., Inc.*, No. 10 Civ. 515, 2014 WL 1057079, at *1 (D. Me. Mar. 14, 2014).  In exercising its fiduciary duty to determine whether a settlement is fair, reasonable, and adequate, courts first examine whether there was procedural fairness in the negotiation process leading to settlement.  *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 93 (D. Mass. 2005).  Courts then consider substantive fairness to determine whether the settlement's terms are fair, adequate, and reasonable by examining the litigation itself, its complexity and risks, and the possible recovery.  *See, e.g.*, *In re Relafen*, 231 F.R.D. at 71-72; *In re Lupron*, 228 F.R.D. at 93-94.

While the First Circuit has not established a fixed test for evaluating the fairness of a class settlement, several courts in this circuit have looked to the factors set forth by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). *See, e.g.*, *In re Lupron*, 228 F.R.D. at 93-94 (noting that *Grinnell* has supplied the "most commonly referenced factors," and applying them); *In re Relafen*, 231 F.R.D. at 71-72; *New Eng. Carpenters Health Benefits Fund v. First DataBank, Inc.*, 602 F. Supp. 2d 277, 280-81 (D. Mass. 2009). The *Grinnell* factors consider:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted).

On October 5, 2017, the Court granted preliminary approval of the Agreement, finding that it "is a fair, reasonable, and adequate settlement" of the case. ECF No. 214 at 3. Plaintiffs now respectfully request final approval of the Agreement.

**A.    The Settlement Is Fair.**

**1.    Litigation Through Trial Would Be Complex, Costly, and Long.**

By reaching a favorable settlement prior to class certification, summary judgment, or trial, Plaintiffs avoid significant expense and delay, and ensure a risk-free recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & Ger. Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). This case is no exception, with more than a thousand

Putative Class Members in several states, and complex legal claims brought under federal and state law.

As outlined below, the Parties have exchanged significant discovery.  Absent settlement, the next steps would be numerous depositions, class certification and decertification briefing, and potentially summary judgment motions on Defendants' affirmative defenses.  This litigation would be cost and time-intensive.  The proposed Settlement, on the other hand, provides substantial relief to Class Members in a certain, prompt, and efficient manner.

### 2.    The Reaction of the Class Supports Final Approval.

The reaction of the Class has been positive.  834 Class Members submitted Claim Forms, an additional 311 Opt-In Plaintiffs will benefit, and only two Class Members opted out.  This favorable reaction "constitutes strong evidence of [the] fairness of [the] proposed settlement and supports judicial approval." *Hill v. State St. Corp.*, No. 09 Civ. 12146, 2015 WL 127728, at *8 (D. Mass. Jan. 8, 2015) (internal quotations omitted), *appeal dismissed*, 794 F.3d 227 (1st Cir. 2015).

Only one Class Member – Bruce Tucker – objected to the proposed Settlement.  It is the nature of class action litigation that a settlement may not satisfy every single class member but that is not grounds to reject the proposed Settlement.  *See In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 761 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987); *Mathes v. Roberts*, 85 F.R.D. 710, 715 (S.D.N.Y. 1980) ("while the objectants [sic] may have preferred a different resolution, such a preference is neither a ground for rejecting the instant proposal as unfair and inequitable nor is it evidence of the inappropriateness of the benefits to be accorded to plaintiffs").

In this case, the lone objector does not present grounds for rejecting the proposed Settlement. Mr. Tucker is a former Price Chopper employee whose employment was terminated on August 25, 2015. *See* Skey Decl. Ex. C. He states that he was fired "allegedly due to an employee violating company safety regulations." He objects to the proposed Settlement, in part, because he believes that he "would have been disciplined in a different way if [he] hadn't joined this suit." By his own admission, however, Mr. Tucker states: "I realize that I can't prove this . . .." An objection based upon a theory that Mr. Tucker "can't prove" concerning an incident that occurred more than two years ago is not a valid ground for his objection and it should be overruled.

Mr. Tucker also claims that he should be receiving a larger settlement sum because of the number of overtime hours he personally worked. Even assuming Mr. Tucker could prove he worked this overtime, Defendants were prepared to present their own evidence that the Class Members were properly characterized as exempt employees. Moreover, even if, as Mr. Tucker claims, the best possible recovery in the case was significantly higher than the proposed Settlement, it would not bar approval of the settlement, given the risks involved in the case. Thus, his objection on this basis should be overruled.

Mr. Tucker's final argument in support of his objection is unavailing and inaccurate. He states that the Opt-in Plaintiffs should be treated more favorably in the proposed Settlement and receive more money than the "other plaintiffs" because it is his "understanding that without the Opt-In-Plaintiffs there wouldn't have been a lawsuit." However, there already was a lawsuit before the Opt-in Plaintiffs became a part of the case, so that claim is incorrect. In fact, Opt-In Plaintiffs are treated more favorably under the allocation formula because they asserted their claims by opting in. Class Counsel estimates that Opt-In Plaintiffs will receive approximately

80% of their unpaid overtime, while Putative Class Members will receive approximately 42%. *See* Swartz Decl. ¶ 28.

As aptly stated by another court when considering a much larger number of objections submitted to it, "it is the conclusion of this [c]ourt that the substance of the objections to this Proposed Settlement are without merit and do not weaken this Court's decision that the Settlement is fair, adequate and reasonable, and that the Settlement provides substantial and real benefits to the Class." *Varacallo v. Massachusetts Mut. Life Ins. Co.,* 226 F.R.D. 207, 248 (D.N.J. 2005).

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly.

There was more than sufficient discovery for the Parties and their counsel to make sound judgments about how to settle the case on reasonable terms. In this context, there is no "require[ment] that discovery be completed, but rather that sufficient discovery be conducted to make an intelligent judgment about settlement." *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 107. The fact that the "parties were sufficiently informed" despite "limited discovery" evidences that sufficient discovery had been undertaken to allow an informed judgment. *In re P.R. Cabotage Antitrust Litig.*, 269 F.R.D. 125, 141 (D.P.R. 2010).

The Parties' discovery meets this standard. They exchanged documents and ESI from corporate witnesses, managers, Plaintiffs, and Opt-In Plaintiffs, and Defendants took three Plaintiffs' depositions. Swartz Decl. ¶¶ 22-23. Plaintiffs also used an expert to analyze Defendants' pay data in order to evaluate the potential damages. *Id*. ¶ 26. This discovery was "sufficient . . . to make an intelligent judgment about settlement." *Hochstadt*, 708 F. Supp. 2d at 107.

4.    **Plaintiffs Would Face Risks if the Case Proceeded; the Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery.**

Although Plaintiffs believe their claims have merit and are suitable for class action treatment, they also recognize that they would face significant legal, factual, and procedural obstacles to prevailing on their claims and overcoming Defendants' defenses.

"As any experienced lawyer knows, a significant element of risk adheres to any litigation taken to binary adjudication." *In re Lupron*, 228 F.R.D. at 97. Defendants deny that they misclassified Department Managers and contest the propriety of class and collective certification. If the case were further litigated, Plaintiffs expect that Defendants would challenge the claims at every stage of the litigation, including at summary judgment, trial, and potentially various pre- and post-trial appeals.

Settlement now saves Class Members from the significant risk that they would not recover anything, and the delay inherent in further litigation and possible appeals. The litigation is highly complex, both procedurally and substantively, and settling Class Members' claims saves the Parties from conducting substantial additional discovery into Class Members' job duties and hours, taking depositions and written discovery of a sampling of opt-ins, and engaging in expert discovery and pre-trial motion practice. For these reasons, the law strongly favors settlements, particularly where complex class action litigation is concerned. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

Establishing Defendants' liability and proving damages would require significant factual development. Class Counsel are experienced and realistic, and understand that the resolution of liability issues, a potential trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. Moreover, Plaintiffs are aware that if this lawsuit continued, any recovery may not occur for several years. Although there is a possibility that the Class could

12

recover more money, including interest, after trial, the Agreement provides the significant

benefit of a guaranteed and substantial payment to Class Members now.

### 5. Maintaining the Class Through Trial Would Not Be Simple.

The risk of obtaining class certification pursuant to Rule 23, overcoming decertification

of the FLSA collective, and maintaining certification through trial militates in favor of

settlement. The Court had not yet certified the proposed classes and such a determination would

likely be reached only after extensive discovery and briefing.

If the Court had granted Rule 23 certification, Defendants would likely seek permission

to file an interlocutory appeal under Rule 23(f) or challenge class certification or the propriety of

calculating Class Members' damages in a post-trial appeal. *See* Fed. R. Civ. P. 23(f); 28 U.S.C.

§ 1291; *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 342, 367 (2011) (decertifying nationwide

class in interlocutory appeal under Rule 23(f) that challenged class certification after a decade of

litigation). Risk, expense, and delay permeate such a process. Settlement eliminates this risk,

expense, and delay.

### 6. Defendants' Ability to Withstand a Greater Judgment Does Not Detract from the Fairness of the Settlement.

Defendants have not indicated that they would be unable to pay a greater judgment. But

this factor, standing alone, "does not suggest that the settlement is unfair." *Frank v. Eastman

Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & Ger. Bank

Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9). At best, the factor is neutral, and does not weigh

against approval. *In re Lupron*, 228 F.R.D. at 97 ("This defendant-oriented factor is largely

neutral as there seems little doubt that [defendant corporations] are defendants with classic deep

pockets.").

Because all the relevant *Grinnell* factors support final approval, Plaintiffs respectfully submit that their motion for final approval should be granted.

### B.   The Plan of Allocation Is Fair, Reasonable, and Adequate.

"A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable and adequate." *Hill*, 2015 WL 127728, at *11. "A plan of allocation is fair and reasonable as long as it has a 'reasonable, rational basis.'" *Id.* (quoting *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012)). The plan of allocation need not treat all class members the same, and "may allocate funds based on the extent of class members' injuries and 'consider the relative strength and values of different categories of claims.'" *Id.* (quoting *In re IMAX Sec. Litig.*, 283 F.R.D. at 192). The views of experienced counsel are given "great weight[.]" *Id.* ("courts look primarily to the opinion of counsel").

The proposed plan of allocation satisfies these standards. It accounts for the greater risks of some Class Members' claims, as well as the affirmative steps that Opt-In Plaintiffs made to protect their rights by joining the case. *See Hill*, 2015 WL 127728, at *11 (approving a plan of allocation that allocated settlement fund proceeds based on the losses class members suffered due to defendants' conduct). Class Counsel estimates that Putative Class Members will receive approximately 42% of their unpaid overtime, and Opt-In Plaintiffs will receive approximately 80% of their unpaid overtime. Swartz Decl. ¶ 28.

### C.   Final Certification of the Class Is Appropriate.

On October 5, 2017, the Court granted preliminary approval of the Agreement that defines the Settlement Class as described in § 1.27 of the Settlement Agreement. ECF No. 214. Since that time, nothing has changed to alter the propriety of class certification. For all the reasons stated in Plaintiffs' Motion for Preliminary Approval, incorporated herein by reference,

Plaintiffs now request that the Court grant final certification of the Class for the purposes of effectuating the Agreement, pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3).

## II.    **The Service Awards to Plaintiffs Should Be Approved as Fair and Reasonable.**

Plaintiffs request approval of Service Awards of $10,000.00 each.  The Service Awards that they request are reasonable given the significant contributions they made to advance the prosecution and resolution of the lawsuit.  Plaintiffs in class and collective action lawsuits play a crucial role in bringing justice to those whose claims would otherwise be hidden from judicial scrutiny.  *Scovil v. FedEx Ground Package Sys., Inc.*, No. 10 Civ. 515, 2014 WL 1057079, at *6 (D. Me. Mar. 14, 2014) ("Because a named plaintiff is an essential ingredient of any class action, an incentive or service award can be appropriate to encourage or induce an individual to participate in the suit.").  This is especially true in employment litigation.  *See Bozak v. FedEx Ground Package Sys., Inc.*, No. 11 Civ. 00738, 2014 WL 3778211, at *4 (D. Conn. July 31, 2014) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.") (internal quotation marks omitted).

Service awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs.  *See, e.g.*, *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, No. MDL 09-2067, 2014 WL 4446464, at *9 (D. Mass. Sept. 8, 2014) ("The purpose of . . . incentive awards is to reimburse the plaintiffs for their effort in pursuing the claims on behalf of the entire class."); *Bussie v. Allamerica Fin. Corp.*, No. 97 Civ. 40204, 1999 WL 342042, at *3-4 (D. Mass. May 19, 1999) (courts consider, *inter alia*,

efforts of the named plaintiff in granting awards).  Service awards are commonly awarded to those who serve the class's and collective's interests.  *Scovil*, 2014 WL 1057079, at *6.

In examining the reasonableness of a requested service award, courts consider: (1) the actions the plaintiffs have taken to protect the interests of the class, (2) the amount of time and effort the plaintiffs expended in pursuing the litigation, and (3) the degree to which the class has benefited from those actions.  *Id.*; *Bozak*, 2014 WL 3778211, at *4.

Here, Plaintiffs actively participated in the investigation and litigation of the lawsuit, gave significant amounts of their own time, and helped to achieve a substantial benefit for Class Members.  *See* Swartz Decl. ¶¶ 31-32.  They provided documents and information as part of the discovery process; Mr. Ogden, Ms. Farrar, and Mr. Cardinale prepared for several hours for their depositions and had their depositions taken; and Ms. Davine and Ms. Farrar attended the first mediation.  *Id.* ¶ 32.  These actions support approval of the requested Service Awards.  *See, e.g.*, *Scovil*, 2014 WL 1057079, at *7-8 (approving $15,000 service awards to plaintiffs who provided assistance throughout the lawsuit, and discussing comparable awards approved by other district courts); *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494, 2015 WL 2255394, at *7 (S.D.N.Y. May 7, 2015) (approving $15,000 service award to plaintiff for "participating in a lawsuit against her former employer and the efforts she made on behalf of the class, including producing documents, continuously speaking with Class Counsel, and actively participating in the mediation").

In addition to the work they performed, Plaintiffs took on risk by standing up for others and associating their names with the lawsuit.  *See DeLeon*, 2015 WL 2255394, at *7 (recognizing "the risks that the named-Plaintiff faced by participating in a lawsuit against her former employer").  Even "former employees . . . fac[e] potential risks of being blacklisted as

16

'problem' employees." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012). "Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person." *Guippone v. BH S & B Holdings, LLC*, No. 09 Civ. 01029, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011).

The amounts that Plaintiffs request are less than or equal to those that courts have approved based on similar contributions. *See Scovil*, 2014 WL 1057079, at *6-8 (collecting cases).[5] In total, they are less than 1% of the total recovery, which is a reasonable percentage. *See, e.g.*, *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving awards of approximately 16.6% of the total recovery); *Parker v. Jekyll & Hyde Ent. Holdings, LLC*, No. 08 Civ. 7670, 2010 WL 532960, at *2 (11% of recovery is reasonable "given the value of the representatives' participation and the likelihood that class members who submit claims will still receive significant financial awards"); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (awarding service award of approximately 8.4% of the total recovery).

---

[5] *See Hadel v. Gaucho, LLC*, 193 F. Supp. 3d 243, 244 (S.D.N.Y. 2016) (approving $15,000 award to two class representatives); *Anderson v. HomeDelivery*, No. 11 Civ. 10313 (D. Mass. Dec. 17, 2014) (approving $15,000 service award to three class representatives) (final settlement approval motion at ECF No. 106); *In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, No. 10 Civ. 30163, 2014 WL 6968424, at *7 (D. Mass. Dec. 9, 2014) (approving $10,000 service awards to each of ten class representatives); *Dent v. ITC Serv. Group, Inc.*, No. 12 Civ. 00009, 2013 WL 5437331, at *4 (D. Nev. Sept. 27, 2013) (approving $15,000 service award); *Sewell*, 2012 WL 1320124, at *14-15 (approving $10,000 award); *Capsolas v. Pasta Res., Inc.*, No. 10 Civ. 5595, 2012 WL 4760910, at *10 (S.D.N.Y. Oct. 5, 2012) (approving $20,000 service award); *Ebbert v. Nassau County*, No. 05 Civ. 5445, 2011 WL 6826121, at *19 (E.D.N.Y. Dec. 22, 2011) (approving $20,000 service award to the six named plaintiffs, and noting that the awards "when compared to incentive awards given generally to named plaintiffs across a variety of class actions ... fall solidly in the middle of the range"); *Reyes*, 2011 WL 4599822, at *9 (approving $15,000 service awards to three class representatives); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (approving $10,000).

**III.    The Requested Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable.**

Class Counsel's request for one-third of the fund as their attorneys' fees plus their out of pocket costs and expenses of $75,000 is reasonable.  When counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995).  This premise is "founded on the equitable principle that those who have profited from litigation should share its costs."  *In re Thirteen Appeals*, 56 F.3d at 305 n.6; *see also Boeing*, 444 U.S. at 478.

**A.    The Requested Fee Is Reasonable.**

Although there are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage of the fund method, *see In re Thirteen Appeals*, 56 F.3d at 306-07—courts generally favor awarding fees in common fund cases as a percentage of the fund.  *Id.* at 307 ("use of the [percentage of the fund] method in common fund cases is the prevailing praxis").

This is so because the percentage of the fund method promotes judicial economy.  It encourages early resolution of cases, and there is a strong disincentive for attorneys "to be inefficient or to drag [their] feet in pursuing settlement options."  *See id*.  The percentage method also preserves judicial resources because it permits courts to focus on the benefit conferred upon the class rather than reviewing lengthy billing records.  *Id.* ("[T]he [percentage of the fund] method permits the judge to focus on a showing that the fund conferring a benefit on the class resulted from the lawyers' efforts.") (internal quotation marks omitted).

Approval of one-third of the fund as fees "is consistent with wage-and-hour settlements in the . . . jurisdiction of Massachusetts."  *Scovil v. FedEx Ground Package Sys., Inc.*, No. 10

Civ. 515, 2014 WL 1057079, at *5 (D. Me. Mar. 14, 2014) (approving one-third of $5.8 million

settlement fund in misclassification case); *see also Matamoros v. Starbucks*, No. 08 Civ. 10772

(D. Mass. Aug. 16, 2013) (approving one-third of $23.5 million settlement) (approval motions at

ECF Nos. 159 and 167); *Crenshaw v. Texas Roadhouse, Inc.*, No. 11 Civ. 10549 (D. Mass. Sept.

5, 2012) (approving one-third of $5 million settlement) (approval motion at ECF No. 53).[6]

     As discussed above, Class Counsel undertook substantial efforts to achieve the

settlement, including litigating a contested conditional certification motion; engaging in

discovery and discovery motion practice; responding to discovery, including requests for thirty

Opt-In Plaintiffs; and participating in two mediations and extensive settlement negotiations.

Swartz Decl. ¶¶ 21-26.

     Class Counsel's request for one-third of the fund, or $2,166,666, is less than their

combined lodestar of $2,363,183.  Swartz Decl. ¶ 36; Kinne Decl. ¶ 18.  Class Counsel spent

over 6,000 hours litigating and settling this matter.  Swartz Decl. ¶ 34; Kinne Decl. ¶ 16.  The

time spent by Class Counsel is described in Class Counsel's declarations and summaries of time

records.  *See* Swartz Decl. Ex. C (O&G Fee Records); Kinne Decl. Ex. A (Kinne Fee Records).

The fact that Class Counsel is seeking less than their lodestar supports the reasonableness of their

request, as courts regularly grant similar awards and lodestar multipliers.  *See, e.g.*, *In re P. R.

Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 466 (D.P.R. 2011) (approving lodestar multiplier

of 1.08); *In re TJX Cos. Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395, 408 (D. Mass. 2008)

(applying a lodestar multiplier of 1.97); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d

249, 271 (D.N.H. 2007) (applying a lodestar multiplier of 2.697); *In re Relafen Antitrust Litig.*,

---

[6] In addition, "[t]he First Circuit does not require a court to cross check the percentage of fund
against the lodestar in its determination of the reasonableness of the requested fee."  *In re
Relafen Antitrust Litig.*, 231 F.R.D. 52, 81 (D. Mass. 2005) (*citing In re Thirteen Appeals*, 56
F.3d at 307).

231 F.R.D. 52, 82 (D. Mass. 2005) ("A multiplier of 2.02 is appropriate."); *see also Malanka v. de Castro*, Nos. 85 Civ. 2154, 88 Civ. 0305, 1990 WL 253610, at *1 (D. Mass. Nov. 20, 1990) (where lodestar involved a "negative" multiplier, percentage-of-the-fund method was appropriate).

The Court should also consider the time that Class Counsel will spend administering the settlement after final approval. *See Hall v. ProSource Techs., LLC*, No. 14 Civ. 2505, 2016 WL 1555128, at *14 (E.D.N.Y. Apr. 11, 2016) (collecting cases). The negative multiplier that Class Counsel seeks will diminish even further over time as time is spent responding to Class Members' inquiries about the settlement, preparing for and attending the final fairness hearing, answering questions from the claims administrator, and negotiating and possibly litigating disagreements with Defendants about administering the settlement and distributing the fund. Swartz Decl. ¶ 38. Because Class Counsel will likely perform substantial work after the final approval hearing, Class Counsel's request is "even more reasonable than it appears at first glance." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013).

Class Counsel's requested fee award is also warranted because Class Counsel has documented their time and used billing judgment. Class Counsel has maintained contemporaneous time records by each attorney, paralegal, and support staff participating in the case, *see* Swartz Decl. ¶ 37; Kinne Decl. ¶ 19; and has endeavored to minimize duplication of efforts, maximize billing judgment, and have work performed by the attorney or paralegal with the lowest hourly rate who was able to effectively perform it, *see* Swartz Decl. ¶ 35; Kinne Decl. ¶ 17.

**B.**    **Class Counsel Are Entitled to Recover Their Out-of-Pocket Expenses, Which Are Reasonable and Have Inured to the Benefit of the Class.**

Class Counsel seek reimbursement of $75,000 of their litigation costs and expenses. "[L]awyers who recover a common fund for a class are entitled to reimbursement of out-of-pocket expenses incurred during litigation." *Latorraca v. Centennial Techs. Inc.*, 834 F. Supp. 2d 25, 28 (D. Mass. 2011); *see also In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 606 (1st Cir. 1992).

As of December 26, 2017, Class Counsel have incurred $81,774.23 in litigation costs and expenses and will incur additional costs through the conclusion of this matter.  Swartz Decl. ¶ 41; Kinne Decl. ¶ 23.  These costs are for deposition transcripts, filing fees, mediation fees, expert fees, photocopying, telephone conference calls, mailing expenses, travel, and other reasonable litigation-related costs.  *See* Swartz Decl. Ex. C; Kinne Decl. Ex. B.  These costs were necessary to prosecute of the litigation and were incurred for the benefit of the Class.  *Id.* Accordingly, they are reimbursable.  *See In re Fid./Micron Secs. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999).

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an order: (1) approving the settlement as fair, adequate, and reasonable, as set forth in the Settlement Agreement; (2) approving a Service Award of $10,000 to each Plaintiff; (4) approving Class Counsel's request for one-third of the settlement fund ($2,166,666) for their attorneys' fees and $75,000 in costs and litigation expenses; (3) approving the Claims Administrator's fees of $28,032; (4) incorporating the terms of the Settlement Agreement; and (5) dismissing the case with prejudice.

Dated:  January 3, 2018
        New York, New York                Respectfully submitted,

                                          */s/* Justin M. Swartz
                                          **OUTTEN & GOLDEN LLP**
                                          Justin M. Swartz (admitted *pro hac vice*)
                                          Rachel Bien (admitted *pro hac vice*)
                                          Michael N. Litrownik (BBO #680218)
                                          685 Third Avenue, 25th Floor
                                          New York, New York 10017
                                          Telephone: (212) 245-1000
                                          Facsimile: (646) 509-2060

                                          **COHEN KINNE VALICENTI & COOK LLP**
                                          Kevin M. Kinne (BBO# 559004)
                                          28 North Street, 3rd Floor
                                          Pittsfield, Massachusetts 01201
                                          Telephone: (413) 443-9399
                                          kkine@cohenkinne.com

                                          ***Attorneys for Plaintiffs, the Collective,
                                          and the Proposed Classes***

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on January 3, 2018 a copy of the foregoing documents were filed electronically and service made by certified mail to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by certified mail for anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

*/s/ Justin M. Swartz*